[No. 36681.   Department Two.   April 9, 1964.]

NORINE WHITING, *Appellant*, v. WALTER A. JOHNSON *et al.*, *Respondents and Cross-appellants.*\*

\*Reported in 390 P. (2d) 985.

*Morrison & Huppin,* by *D. N. Morrison,* for appellant.

*James A. Schasre,* for respondents and cross-appellants.

HAMILTON, J.—Plaintiff, as assignee of Sherwood & Roberts, Inc., a real-estate brokerage firm, initiated this action seeking to recover a brokerage commission from defendants arising from the sale of a portion of defendants' property. The trial court found a commission to be due and entered judgment therefor against defendant husband individually. Both parties have appealed, plaintiff as to that portion of the judgment denying community liability, and defendants as to that portion of the judgment holding a commission to be due.

The defendants, who had engaged for a number of years in home construction and land development, owned and resided upon 48 acres of partially improved suburban property in the vicinity of the Little Spokane River, north of Spokane, Washington. They mutually desired to sell the property and had, during 1960, listed it with another realty firm. On March 7, 1961, Mr. Johnson contacted Sherwood & Roberts, Inc., relative to the prospect of listing the property. On March 8th, Robert W. Brunkow, a representative of Sherwood & Roberts, Inc., called at defendants' residence, whereupon Mr. Johnson showed him the property, stated the price and terms, and expressed the desire that the whole of the 48 acres be sold. Mrs. Johnson was not at home on this day. Following the tour of the premises and the discussion of price and terms, a real-estate listing agreement was drawn up. Mr. Johnson affixed his signature and that of his wife to the agreement, advising Mr. Brunkow that he normally signed his wife's name to such documents. The listing agreement, in pertinent part, provided:

"In consideration of your agreement to inspect, advertise, try to sell, and to list the property described herein with Realty Multiple Exchange, Inc., during the life hereof and to use your efforts to find a purchaser therefor, I hereby grant you for the period of NINETY DAYS from the date

hereof, the exclusive right to sell or exchange said property, *or any part thereof, at the price and terms stated hereon or at such other price or terms of exchange to which I may agree,* . . .

"During the life of this contract, if you find a buyer who is ready, able and willing to buy said property at said price and on said terms, or any other price or terms to which I may agree in writing, or if I agree to an exchange of said property, or if said property is sold or exchanged during said term by me or any other person, firm or corporation, *or if it is sold or exchanged within three months after expiration of the term of this agreement to any person to whom you or any member of the Realty Multiple Exchange, Inc., or any person authorized by a member of the Realty Multiple Exchange, Inc., have previously offered it, I agree to pay a commission of Six Percent* . . ." (Italics ours.)

The following day Mr. Brunkow returned to the defendants' property with Mr. Phillip Schaffer, the salesman who was to handle the listing, and conducted him about the premises. Mrs. Johnson was home on this day and was introduced. The following week both Mr. Brunkow and Mr. Schaffer returned to the premises with 6 or 8 salesmen from Sherwood & Roberts, Inc., to acquaint them with the listing. Mrs. Johnson met them and conducted them about the residence, pointing out and explaining the various conveniences, including a therapeutic bath, which would be of interest to a prospective purchaser.

About midway in the listing period, after showing the place to two or three prospects and attempting to work up an exchange of properties without success, Mr. Schaffer heard of and contacted Dr. Gene Slichter. He first showed the property to Dr. and Mrs. Slichter on a Sunday, at which time they indicated an interest, but were hesitant about purchasing any more than the 6 acres occupied by the residence and outbuildings. Mr. Schaffer apparently intimated that such a purchase might be worked out for shortly thereafter he showed the property again to Dr. and Mrs. Slichter, together with some of their family. On both occasions, the Slichters were introduced to one or both of the Johnsons. Following the second showing, Dr. Slich-

ter consulted with his accountant to ascertain the extent of his financial capabilities. His accountant advised him that he was acquainted with Mr. Johnson, was familiar with the premises, and would call Mr. Johnson about the proposed purchase. Mr. Johnson informed the accountant that he was not interested in selling anything less than the full 48 acres. Dismayed and believing Mr. Schaffer had misled him, Dr. Slichter advised Mr. Schaffer he would be unable to purchase the property. No further negotiations were carried on between Dr. Slichter and Mr. Schaffer.

At the inception of the listing, it was understood by the listing agency that the Johnsons were primarily interested in selling the acreage as a unit. Mr. Schaffer, however, testified that during the course of the listing period Mr. Johnson advised him he would consider selling less than the whole. Mr. Johnson, on the other hand, testified he was insistent throughout that the whole be sold as a unit, was dissatisfied with the listing agency for indicating that the property might be parcelled, and refused for this reason to relist the property with the agency upon the expiration of the 90-day listing period.

Subsequent to the expiration of the listing period, and during the 3-month period that followed, Dr. Slichter again contacted his accountant relative to the property. Negotiations with Mr. Johnson followed, culminating in a sale to Dr. Slichter of the 6 acres occupied by the residence and improvements. It is upon this sale that plaintiff claims a commission to be due under the terms of the listing agreement.

Two issues are presented upon appeal. First, whether under the provisions of the listing agreement plaintiff's assignor is entitled to a commission for the sale in question, and, second, if a commission be due, whether it is an obligation of defendants' marital community.

Upon the first issue, defendants contend, in essence, that a commission is not payable because the 48 acres were not sold. Supplementing this contention, defendants assert that the listing agency suggested by its advertising and Mr.

Schaffer's dealings with Dr. Slichter that the property could be sold in parcels, and thus, in effect, abandoned the purpose and intent of the listing contract, which was to sell the 48 acres.

We, along with the trial court, are unable to agree with defendants' theme. It is virtually undisputed that (a) Mr. Schaffer located and contacted Dr. Slichter as a prospective purchaser within the 90-day listing term; (b) the premises were first offered to Dr. Slichter in accordance with the terms listed; (c) after Dr. Slichter indicated disinterest in the whole of the 48 acres, Mr. Schaffer suggested that a transaction involving 6 acres might be evolved; (d) further negotiations along this line were circumvented by the intervention of the accountant, Mr. Johnson's peremptory rejection of such a transaction, and the doctor's resultant disenchantment with Mr. Schaffer; (e) following termination of the listing period, negotiations between Mr. Johnson and the doctor were resumed, through the offices of the accountant, resulting in the transaction suggested by Mr. Schaffer; and (f) the listing agreement accorded to the broker the exclusive right, for 90 days, to sell the property in question, *or any part thereof*, at the price and terms stated or at such other price and terms agreeable to defendants, and provided for payment of a commission if the property was sold within 3 months after the listing term to any person to whom the broker offered it.

In *Chamness v. Marquis*, 62 Wn. (2d) 509, 383 P. (2d) 886, we recognized that the weight of authority accepted and gave force to extension provisions such as contained in the instant contract. We quoted from 27 A.L.R. (2d) 1408, as follows (p. 503):

" 'Frequently brokerage contracts, particularly exclusive ones, contain stipulations either that the broker shall have a right to commissions on a sale consummated after termination of the contract to a prospect procured by the broker, or that he shall be entitled to commissions on a sale within a specified time after termination of the contract to a prospect procured by him.

" *'Construing contracts, whether exclusive or not, containing such stipulations, the courts in most instances have*

*recognized that such provisions bound the owners to pay commissions on sales to the prospects within the named period after termination of the contract . . .'* (Italics ours.)"

The reason and purpose of such extension provisions are expressed in *Messick v. Powell,* 314 Ky. 805, 811, 236 S. W. (2d) 897, 27 A.L.R. (2d) 1341:

". . . real estate brokerage is a highly competitive business and it is a logical conclusion that the provision was intended to protect the agent beyond the duration of the exclusive 'agency or right' to sell the property in order that he might not be deprived of his compensation for finding and presenting a purchaser during that period should the owner sell to him. Without such protection, it would have been an easy matter for the owners to circumvent his right by post-poning acceptance until the definite time had expired. . . ."

Without undertaking a precise definition of the term "previously offered," or an extended analysis of cases from other jurisdictions, we conclude that under the contractual provisions and the facts presented in this case, the trial court correctly concluded that plaintiff's assignor was entitled to a commission upon the sale in question.

The second issue presented is whether defendants' marital community is indebted for the commission. It arises out of the fact that Mrs. Johnson did not sign the listing agreement. It is plaintiff's contention that Mrs. Johnson by her conduct either ratified the listing agreement or is estopped from asserting she did not authorize it. The defendants contend, and the trial court concluded, that because Mrs. Johnson did not know the precise terms and conditions of the listing agreement and its extension provisions it cannot be said she authorized or ratified it. Defendants rely upon *McGlauflin v. Merriam,* 7 Wash. 111, 34 Pac. 561, and *Geoghegan v. Dever,* 30 Wn. (2d) 877, 194 P. (2d) 397.

In considering the issue thus presented, it is to be borne in mind that (a) the Johnsons were experienced in real-estate transactions, having engaged in the business of land development, home construction, and sales promotion for a

number of years; (b) they *mutually agreed* to sell the property in question; (c) they had within the previous year both signed a listing agreement identical in form to the one here in issue; (d) at the time of the execution of the instant agreement, a copy was left with Mr. Johnson; (e) Mrs. Johnson met Messrs. Brunkow and Schaffer, participated in a tour of the premises with them and other salesmen from the listing agency, was introduced to the Slichters by Mr. Schaffer, admittedly knew that a real-estate commission would be payable if the property was sold through a real-estate firm, and joined in the subsequent sale of the 6 acres to the Slichters.

■ The basic rule, long recognized and applied in this state, is that, if a husband enters into a contract to sell, lease, or list for sale community realty without his wife joining therein, and she either authorizes such or consents thereto or subsequently sanctions or ratifies his act, neither she nor the community may thereafter disaffirm it. *Konnerup v. Frandsen*, 8 Wash. 551, 36 Pac. 493; *O'Connor v. Jackson*, 33 Wash. 219, 74 Pac. 372; *Washington State Bank of Ellensburg v. Dickson*, 35 Wash. 641, 77 Pac. 1067; *Hay v. Chehalis Mill Co.*, 172 Wash. 102, 19 P. (2d) 397; *Bowman v. Hardgrove*, 200 Wash. 78, 93 P. (2d) 303; *In re Horse Heaven Irr. Dist.*, 19 Wn. (2d) 89, 141 P. (2d) 400; *McGillivray v. Nielson*, 30 Wn. (2d) 589, 192 P. (2d) 369.

Two alternate inquiries thus present themselves: (1) Did Mrs. Johnson expressly or by implication authorize or consent to listing the property in question for sale, or (2) did Mrs. Johnson, by her acts and conduct, subsequently sanction or ratify the listing agreement. If the first question be answered in the affirmative, the second question need not necessarily be answered, for the authorized act of Mr. Johnson in listing the property for sale becomes a community project, executed for a community purpose and benefit, thereby rendering the community liable in accordance with the terms of the contract. See *Calvin Philips & Co. v. Langlow*, 55 Wash. 385, 104 Pac. 610; *Bird v. Steele,* 74 Wash. 68, 132 Pac. 724; *Calvin Philips & Co. v. Mercy,*

126 Wash. 376, 218 Pac. 4; *Calvin Philips & Co. v. Bergman,* 130 Wash. 346, 227 Pac. 321.

The *McGlauflin* and *Geoghegan* cases, *supra,* relate to and concern themselves with the principle of ratification found in the second question. In each, the wife involved was from the outset opposed to selling the community property listed by the husband. Thus, the husband was without previous authority to incur a community indebtedness by employing a broker, and the only remaining question was whether the wife, under the facts presented, had subsequently ratified the act. In answering the question so posed, we did not impinge upon or eliminate the first question. In both cases we recognized indirectly, if not directly, that previous authorization by the wife to sell would dictate a different result. In *McGlauflin, supra,* we said (p. 113):

"There was nothing to show that George McGlauflin, the execution debtor, had any authority from his wife to sell, contract to sell, or to find a purchaser for said community lands, and the lands were not in fact sold. The husband, having no authority to sell community real estate, cannot bind the same for any indebtedness incurred by him in employing a broker to find a purchaser therefor, and consequently the judgment obtained by respondent Merriam was not a charge upon the community lands. . . ."

And, in *Geoghegan, supra,* it is stated (p. 896):

" . . . In the *McGlauflin* case, the husband incurred an indebtedness by employing a broker to find a purchaser for community property, which he did not have the authority of his wife to sell, and which he could not convey unless his wife joined in the conveyance. The husband not possessing the power to sell the community property, and there being no ratification by the wife of the brokerage contract, or authority given by the wife for the husband to enter into such a contract, it seems to us to follow that no benefit accrued to the community from the act of the husband in employing the broker to find a purchaser, and such act lacked community purpose and constituted a mere idle gesture, in so far as the community is concerned, unless ratified by the wife.

"We are of the opinion that the rule announced in the *McGlauflin* case, *supra,* that 'the husband, having no au-

thority to sell community real estate, cannot bind the same for any indebtedness incurred by him in employing a broker to find a purchaser therefor,' is still the law of this state and is a proper rule to apply *to facts such as were shown to exist in the McGlauflin case.*" (Italics ours.)

In the instant case Mrs. Johnson expressly agreed and consented to a sale of the community realty. She actively assisted in the furtherance of this purpose by signing one listing agreement. She registered no protest when agents appeared pursuant to the second listing agreement.

We hold that, by implication at least, she authorized and consented to Mr. Johnson's employment of a broker to sell the community realty in question. Mr. Johnson was thereby empowered to act on behalf of the community in listing the property for sale, and the community became bound for any indebtedness so created.

For the reasons assigned, the judgment of the trial court is modified and the cause remanded with instructions to enter judgment in favor of the plaintiff against defendants' marital community. Plaintiff will recover costs.

OTT, C. J., DONWORTH and WEAVER, JJ., and MURRAY, J. Pro Tem., concur.

---

October 16, 1964. Petition for rehearing denied.