[No. 320-3.    Division Three.    December 13, 1971.]

Max Thompson, *Plaintiff*, v. Lyle Hanson *et al., Defendants*, Alpine Shores, Inc., *Respondent*, D. S. McHenry *et al., Appellants*.

*Robert G. Schimanski* (of *Schimanski & Leeds*), for appellants.

*J. Orville Humphries* (of *Humphries & Patterson*), for respondent.

MUNSON, C.J.—This is primarily a factual appeal. We affirm in part and reverse in part since the evidence does not support one finding of fact which may have influenced the trial court's assessment of damages and remand the case to the trial court for the purpose of reconsideration of its monetary conclusion in light of this opinion.

On March 29, 1966, D. S. McHenry, as an individual, entered into a contract with Alpine Shores, Inc. (Alpine) to construct a sewage treatment plant to serve a tract of land owned by the latter. The contract required McHenry to construct the plant, weather permitting, as soon as reasonably possible. In addition to the service aspect of the contract, it was also within the contemplation of the parties that the construction of the new treatment plant would reduce the odor which emanated from the existing McHenry sewage facilities. The first stage of the plant was not finished until June 1, 1968 and the second stage until November 26, 1969.

In the fall of 1967, Lyle Hanson completed the construction of a dwelling on the land to be served by the McHenry sewage plant. Since it was not operational, Hanson employed Max Thompson to perform sanitary services for his dwelling pending the completion of the treatment plant. In December of 1967, Frank Reno, who had purchased a plot of land from Alpine, completed construction of his home and desired to move in. Since the plant was still not completed and the county health authorities would not allow Reno to connect onto the existing sewage system, Alpine employed Thompson to install steel holding tanks at the Reno residence and to keep them pumped out.

Hanson failed to pay Thompson and Thompson started suit to foreclose his lien upon the Hanson property for the sanitary services rendered. Hanson complained over against Alpine, his predecessor in interest, in the amount of the Thompson claim, plus an additional $261.25 for the amount initially paid Thompson. Alpine in turn complained over against McHenry for (1) the Hanson claim, (2) the Reno sanitary service charge, and (3) additional damages suf-

fered by Alpine because of McHenry's failure to complete the construction of the treatment plant as soon as reasonably possible. The trial court rendered judgment in favor of Alpine and McHenry appeals.

The trial court found: A reasonable time for completion of the primary stage of the plant was July 31, 1967; sewer service could have been provided Hanson and Reno from that date. Therefore, the trial court granted judgment against McHenry for (1) $2,125.56 for the Thompson claim against Hanson, plus $261.25 previously paid by Hanson to Thompson; and (2) $2,037.22 for temporary sewer service for the Reno residence expended by Alpine. As to these matters we affirm the trial court. There is substantial evidence to support the findings relative thereto and the judgment entered thereon.

The trial court further found: A reasonable date for completion of the second stage was December 31, 1967; a worse odor emanated from the treatment facilities after completion of the primary stage than previously and this condition persisted until the second stage was completed which detrimentally affected the sale of lots;[1] that Alpine suffered additional damages because of the unreasonable time it took McHenry to complete the project: (a) interest payments and property taxes incurred by Alpine's inability to sell lots;[2] (b) in order to obtain working capital, Alpine was forced to sell several lots at 50 per cent of the anticipated sale price because of the purchaser's inability to obtain building permits until the primary stage of the plant was

---

[1]Finding of fact No. 35: "That the terrible odor created by the effluent being discharged into the drainage ditch from the primary stage of the treatment plant was a substantial deterrent to the sale of lots to the general public during the period from June 8, 1968, until the sewage treatment plant was completed on or about November 26, 1969."

[2]Finding of fact No. 36: "That the estimated sale price of all lots remaining unsold in the Alpine Shores area is the sum of $413,650.00, and Alpine Shores, Inc. is paying interest on a substantial sum of money borrowed from its members at the rate of ten percent per annum. That the real estate taxes on the unsold lots for 1968 amounted to $1552.62, and for 1969 amounted to the sum of $1555.46."

complete;[3] and (c) Alpine suffered additional loss of profit due to McHenry's breach inasmuch as there was a substantial increase in the interest rate on construction loans and other economic developments from December 1967 to November 1969 which made it difficult for purchasers to obtain construction financing thereby requiring Alpine to reduce the sales price of vacant lots 25 per cent.[4] In assessing damages on these findings the trial court entered a lump-sum figure of $43,775.

We believe these additional findings,[5] with the exception of (c) above, are supported by substantial evidence, although disputed.

In *Larsen v. Walton Plywood Co.*, 65 Wn.2d 1, 6, 390 P.2d 677, 396 P.2d 879 (1964) the court stated:

(1) damages for breach of contract in this state can be recovered only for such losses as were reasonably foreseeable by the party to be charged, at the time the contract was made. *Lewis v. Jensen*, 39 Wn. (2d) 301, 235 P. (2d) 312; (2) if the injury was not foreseeable, then it must specifically be shown that the defendant had special knowledge of the risk he was undertaking. *Dally v. Isaacson*, 40 Wn. (2d) 574, 245 P. (2d) 200.

Continuing further in *Larsen* at 15 the court stated:

. The modern view is that they [lost profits] are properly recoverable as damages when (1) they are within the contemplation of the parties at the time the contract was

---

[3]Finding of fact No. 37: "That Alpine Shores, Inc. sold several lots to its members at approximately fifty percent of the anticipated sale price in order to raise funds to maintain said development and make the payments on the purchase price of said property. That said lots were sold on the condition that Alpine Shores, Inc. would not be required to provide title to the purchasers for one year after the sale, and selling said lots at a reduced price, Alpine Shores, Inc. sustained a loss of $24,225.00."

[4]Finding of fact No. 38: "Between 1967 and 1969 there was a substantial increase in interest rates and other costs of obtaining construction loans, as well as economic conditions generally, which has made it more difficult to obtain financing for the construction of homes. That as a result thereof it has been necessary to reduce the sale price of vacant lots approximately 25% in order to make sales of the same."

[5]See findings of fact Nos. 35, 36 and 37, *supra*.

made, (2) they are the proximate result of defendant's breach, and (3) they are proven with reasonable certainty.

The evidence does not sustain a conclusion that the wide swing in interest rates was within the contemplation of the parties at the time the contract was signed; nor was it reasonably foreseeable at that time. Further, there is no specific showing by Alpine that McHenry had special knowledge of the risk created by the unusual increase in interest rates. Consequently, the court's finding of fact No. 38[6] was incorrect. *B. & B. Farms, Inc. v. Matlock's Fruit Farms, Inc.*, 73 Wn.2d 146, 437 P.2d 178 (1968); *Wilkins v. Grays Harbor Community Hosp.*, 71 Wn.2d 178, 186, 427 P.2d 716 (1967); *Kadiak Fisheries Co. v. Murphy Diesel Co.*, 70 Wn.2d 153, 422 P.2d 496 (1967); *Long v. T-H Trucking Co.*, 4 Wn. App. 922, 927, 486 P.2d 300 (1971); 5 Corbin on Contracts § 1012 (1964).

The record, absent finding of fact No. 38, is sufficient to support the total award even though it is higher than we might have found. *Prier v. Refrigeration Eng'r Co.*, 74 Wn.2d 25, 442 P.2d 621 (1968). The presence of finding of fact No. 38, however, reflects the trial court apparently placed a partial reliance thereon and so we remand the case to the trial court for reconsideration of its award in light of this opinion.

McHenry raises several other assignments of error with which we shall deal summarily.

The contract between the parties is unequivocal in its denomination of McHenry, individually, as a party thereto. Consequently, we find no merit in McHenry's contention that Alpine sued the wrong party, *i.e.*, McHenry was president of Liberty Lake Utilities.

Likewise, the total contract was in writing requiring parol evidence only to establish its breach. Hence, McHenry's allegation that the suit should have been brought within 3 years of the breach is without merit.

We find no merit in McHenry's contention relative

---

[6] See note 4.

6

to the court's failure to explicitly establish a date upon which the breach of contract occurred, it being sufficiently established by the findings that the breach occurred when McHenry failed to perform within a reasonable time for the completion of the project. *Cf.* 1 Restatement of Contracts § 314 (1932).

Judgment is affirmed in part and reversed in part and the case is remanded to the trial court for consideration in conformity with this opinion.

GREEN and EVANS, JJ., concur.

Petition for rehearing denied January 31, 1972.