[No. 6075-6-III. Division Three. May 14, 1985.]

MICHAEL M. SMITH, ET AL, *Appellants*, v. R. O. STOUT, ET AL, *Respondents*.

*Ted Roy, Mark T. Torok,* and *Roy & Pell,* for appellants.

*John S. Moore, Jr.,* and *Velikanje, Moore & Shore, Inc.,* for respondents.

GREEN, C.J.—Richard, Robert and Stacy Valicoff and Michael and Cheryl Smith (plaintiffs) brought this action against R. O. and Helen Stout for specific performance of an earnest money agreement or damages and against Henry and Henrietta Bosma to recover damages for interference with a business expectancy. This action arose when R. O. Stout agreed to sell community farmland to two different parties—plaintiffs and the Bosmas. Following a bench trial,

the court entered judgment for the Stouts and the Bosmas and dismissed the action. Plaintiffs appeal.

The dispositive questions are: (1) Could Mrs. Stout disaffirm Mr. Stout's contract with plaintiffs? (2) Did plaintiffs establish damages for breach of contract? (3) Did plaintiffs prove the elements of interference with a business expectancy? The trial court answered "yes" to the first question and "no" to the latter two. We affirm.

The Stouts owned farmland in Yakima County encumbered by prior operating loans from Farmers Home Administration (FHA) and Small Business Administration (SBA), and a real estate contract with the prior owner. The FHA refused to extend an additional loan to the Stouts unless they sold some of the land and obtained a release of the SBA's security interest.

On May 10, 1982, the Stouts executed an earnest money agreement with their neighbors, the Bosmas, for the sale and purchase of a portion of the Stouts' land. The purchase price was the assumption of the underlying real estate contract and the balance of the SBA loan—$475,000. The Bosmas were to obtain SBA's release of its security interest in the Stouts' remaining land and FHA's release of its interest in the land sold. The sale was to close by June 30, but could be closed after that date "unless seller or purchaser gives written notice of termination . . ." The Bosmas were unable to complete arrangements for the releases by June 30.

Meanwhile, plaintiffs had been interested in purchasing some property to grow wine grapes and soft fruit. Roy A. Sample & Associates and Vic Valicoff, a real estate agent, assisted plaintiffs in this endeavor. The realtors, in an effort to find land for plaintiffs, contacted Mr. Stout and obtained his *sole* signature on two listing agreements for the purpose of selling the property to plaintiffs. On July 23, 1982, Mr. and Mrs. Stout went to Vic Valicoff's office and Mr. Stout signed an offer to purchase received from plaintiffs. Mrs. Stout remained in the outer office area and did not sign the agreement.

The Stouts' attorney, Stephen Winfree, became aware of the two purchase agreements when Roy A. Sample & Associates pressed Mr. Stout for its commission on the sale to plaintiffs. Recognizing there may be multiple claims to rights in the property, and with the hope that "somebody would go away", Winfree told Bosma the Stouts would not move ahead on the purchase agreement without complete indemnity against any claims of plaintiffs. When they refused, Winfree notified the Bosmas by letter the purchase agreement with the Stouts was terminated. He also sent Mrs. Stout to another attorney who notified plaintiffs that she disaffirmed their offer of purchase. Winfree by letter notified all parties they could make new offers. Plaintiffs were told their offer should include the $2,000 cost of certain work the Stouts had done on the property.

Plaintiffs refused to offer more money and, on September 21, 1982, commenced this action against the Stouts for specific performance or damages for breach of their purchase agreement. The Bosmas continued negotiating with the Stouts and, on November 30, executed another purchase agreement with them which provided for indemnification. Plaintiffs then amended their complaint, adding a cause of action against the Bosmas for interference with a business expectancy.

At the close of the evidence, the court found (1) the Bosmas' original May 10, 1982, earnest money agreement was valid; (2) the realtors were plaintiffs' agents and were put on notice of the Bosmas' rights, and this notice was imputed to plaintiffs; (3) Mrs. Stout could validly disaffirm plaintiffs' offer; (4) plaintiffs' damages were speculative; and (5) plaintiffs did not establish the Bosmas intentionally and improperly interfered with their contract rights. Plaintiffs challenge each of these determinations.

First, was Mrs. Stout's disaffirmance of plaintiffs' contract valid? An agreement to sell community real property which is not signed by both spouses is voidable by the nonsigning spouse. RCW 26.16.030(3). Plaintiffs contend Mrs. Stout is estopped from avoiding the transaction on

this basis because she ratified or acquiesced in the sale. While such a defense is judicially recognized, it requires participation by the nonsigning spouse in the transaction or evidence of a willingness on the part of the spouse to accept the transaction with all its terms, thus leading the purchasers to believe the nonsigning spouse approves the transaction. *Compare Whiting v. Johnson,* 64 Wn.2d 135, 390 P.2d 985 (1964); *McGillivray v. Nielson,* 30 Wn.2d 589, 192 P.2d 369 (1948); *Colorado Nat'l Bank v. Merlino,* 35 Wn. App. 610, 616–17, 668 P.2d 1304 (1983); *Daily v. Warren,* 16 Wn. App. 726, 558 P.2d 1374 (1977); *Pixton v. Silva,* 13 Wn. App. 205, 534 P.2d 135 (1975) (all addressing authorization) *with Sander v. Wells,* 71 Wn.2d 25, 426 P.2d 481 (1967); *Campbell v. Webber,* 29 Wn.2d 516, 188 P.2d 130 (1947); *Benedict v. Hendrickson,* 19 Wn.2d 452, 143 P.2d 326 (1943); *Louron Indus., Inc. v. Holman,* 7 Wn. App. 834, 502 P.2d 1216 (1972) (estoppel) *and Tombari v. Griepp,* 55 Wn.2d 771, 350 P.2d 452 (1960); *Geoghegan v. Dever,* 30 Wn.2d 877, 194 P.2d 397 (1948); *In re Horse Heaven Irrig. Dist.,* 19 Wn.2d 89, 141 P.2d 400 (1943) (ratification). *See also* Cross, *Community Property Law in Washington,* 49 Wash. L. Rev. 729 (1974); W. Seavey, *Agency,* ch. 3, § 37 (1964).

Here, the trial court could reasonably conclude from the evidence that Mrs. Stout neither knew of nor joined in the purchase agreement with plaintiffs. Plaintiffs point out she testified Mr. Stout was the "man of the house" and selling the property was his decision. This, however, is insufficient to estop her from claiming the benefit of the joinder rule. *Benedict v. Hendrickson, supra.* Moreover, while Mrs. Stout knew it was necessary to sell the land, there is no evidence she was ready to accept the benefits of plaintiffs' transaction—she had already signed an agreement to sell to the Bosmas. Thus, plaintiffs' reference to *Reid v. Cramer,* 24 Wn. App. 742, 603 P.2d 851 (1979) is not helpful. The court's determination that estoppel did not apply and Mrs. Stout did not participate in the purchase contract with the plaintiffs either through authorization, acquiescence or rat-

ification is supported by the evidence.

Second, did plaintiffs prove damages? Plaintiffs correctly assert Mrs. Stout's disaffirmance did not release Mr. Stout from potential separate liability arising from his signature on the purchase agreement. *Geoghegan v. Dever, supra; Colorado Nat'l Bank v. Merlino, supra; Everest v. Levenson,* 15 Wn. App. 645, 646–47, 551 P.2d 159 (1976). Plaintiffs contend although the contract price and the market value of the Stouts' property were the same, the benefit of the bargain here was that the property could be purchased by assuming the underlying low interest on the real estate contract and SBA loan. It is asserted the damages are equal to the difference between the interest rates on these contracts and the prevailing interest rate on new financing.

No authority is cited in support of this argument, nor has our research revealed the issue to be meritorious. *See* Annot., *Vendor and Purchaser: Recovery for Increased Mortgage Interest Costs Where Vendor Fails or Refuses To Convey,* 28 A.L.R.4th 1078 (1984). The difference between rates of interest, without more, is not sufficiently connected with the sale to foreseeably flow from the alleged breach. *See Donovan v. Bachstadt,* 91 N.J. 434, 453 A.2d 160 (1982); *Cal–Val Constr. Co. v. Mazur,* 636 S.W.2d 391 (Mo. Ct. App. 1982). Differences in interest rates have been recovered as incidental damages to the granting of specific performance, *Cal–Val Constr. Co. v. Mazur, supra; Turley v. Ball Assocs. Ltd.,* 641 P.2d 286 (Colo. Ct. App. 1981); *Godwin v. Lindbert,* 101 Mich. App. 754, 300 N.W.2d 514 (1980); *Home Am., Inc. v. Atkinson,* 392 So. 2d 268 (Fla. Dist. Ct. App. 1980), or where the purchaser commits to a higher interest loan to purchase the property. *Julian v. Buckley,* ___ Mont. ___, 625 P.2d 526 (1981). Those circumstances are not present here. Thus, the court did not err in determining damages were speculative. In light of our decision, we need not reach plaintiffs' remaining contentions relating to the Stouts.

Finally, did the plaintiffs prove the Bosmas' negotiating a

second contract and indemnification agreement was an interference with their business relations with the Stouts? The trial court correctly determined plaintiffs did not prove this tort.

█ Interference with a business expectancy requires:

(1) the existence of a valid contractual relationship or business expectancy; (2) knowledge of the relationship or expectancy on the part of the interferor; (3) intentional interference inducing or causing a breach or termination thereof; (4) resultant damage. *Calbom v. Knudtzon,* 65 Wn.2d 157, 396 P.2d 148 (1964).

*Cherberg v. Peoples Nat'l Bank,* 88 Wn.2d 595, 602, 564 P.2d 1137 (1977). Restatement (Second) of Torts, ch. 37, § 766, comment *f* (1977); *see also* Annot., *Liability of Purchaser of Real Estate for Interference With Contract Between Vendor and Another Purchaser,* 27 A.L.R.3d 1227 (1969). Here, there was no valid contractual or business relationship between the Stouts and plaintiffs at the time the Bosmas entered into their second purchase contract and agreement to indemnify the Stouts; the contract between plaintiffs and the Stouts had been validly disaffirmed by Mrs. Stout.

Nor was there evidence the Bosmas thought plaintiffs had superior rights and intentionally induced termination of plaintiffs' relationship with the Stouts. *See Brown v. Safeway Stores, Inc.,* 94 Wn.2d 359, 374, 617 P.2d 704 (1980); *Corinthian Corp. v. White & Bollard, Inc.,* 74 Wn.2d 50, 442 P.2d 950 (1968); *Valley Land Office, Inc. v. O'Grady,* 72 Wn.2d 247, 432 P.2d 850 (1967); Restatement (Second) of Torts, ch. 37, § 766, comment *o* (1977). The Bosmas' contract with the Stouts was prior in time and they, at all times, asserted their contract took priority. Further, the Stouts notified both the Bosmas and plaintiffs that the agreements were terminated or disaffirmed but could be renegotiated. Plaintiffs, instead of renegotiating their offer to purchase, instituted suit against the Stouts. On this record, plaintiffs did not prove the Bosmas' renegotiation of their contract with the Stouts was an inten-

tional interference inducing or causing a breach or termination of any agreement between the Stouts and plaintiffs. *See Brown v. Safeway Stores, Inc., supra* at 374.

The parties' requests for attorney fees on appeal are denied.

Affirmed.

McINTURFF and THOMPSON, JJ., concur.

Review denied by Supreme Court August 16, 1985.