[No. 7804–3–III. Division Three. November 19, 1987.]

LAWRENCE D. KLAAS, *Appellant,* v. ROY HAUETER, ET AL, *Respondents.*

698

*James Kalamon, Diane Hermanson, Ellen Flood Gep-hart,* and *Paine & Hamblen,* for appellant.

*John S. Glassman* and *Longfelder & Tinker,* for respondents.

McInturff, C.J.—Mr. Klaas obtained a judgment against Roy Haueter individually, but not against the community, for a real estate commission under an exclusive listing agreement. Mr. Klaas appeals claiming a basis for community liability exists. We disagree and affirm.

Because Roy and Billee Haueter's apartment building was operating at a loss, they decided to sell it. Mrs. Haueter had given Mr. Haueter her power of attorney. She stated the purpose of giving him the power of attorney was "strictly for convenience sake, because with our six children it wasn't always practical for me to come down to the office, or wherever he was, to sign papers." She said they had an understanding that Roy Haueter would not sign her name unless they had discussed it prior to the signing. Mrs. Haueter testified that by giving Mr. Haueter her power of attorney, she did not intend to be bound by contracts to which Mr. Haueter did not sign her name.

On August 16, 1982, Mr. Haueter signed their names to an exclusive listing agreement with Roger Kreimeyer, a real estate broker, authorizing a 6 percent realtor's commission. Roger Kreimeyer released Mr. and Mrs. Haueter from the exclusive listing contract. Mrs. Haueter testified she was aware of the terms of this contract and had authorized its execution.

On October 3, 1982, Mr. Haueter executed an exclusive listing contract with Larry Klaas. The contract was to expire on March 31, 1983, and contained an exclusion in favor of Dennis Weybright, Tomlinson Agency, which was

to expire on midnight, November 5, 1982.[1] Mrs. Haueter did not sign this exclusive listing contract, nor did Mr. Haueter sign her name under the power of attorney. At trial, Mrs. Haueter stated she had no knowledge of the listing agreement with Mr. Klaas until they were sued. She stated the listing agreement was something she would expect Mr. Haueter to discuss with her if he had signed her name to it.

The Haueters sold the apartment house through Mr. Weybright and Steve Gill on November 29, 1982, for $252,706. Under this agreement, Mr. Weybright received a 6 percent commission on the sale. The court concluded the sale through Mr. Weybright breached the exclusive listing agreement with Mr. Klaas and that Mr. Klaas had damages of $16,946.

The court entered a judgment against Mr. Haueter individually for the commission, interest and attorney fees. No judgment was entered against the community because the court found Mrs. Haueter did not expressly or impliedly authorize the listing with Mr. Klaas and did not ratify the contract.

The only issue is whether the court erred in holding that the exclusive listing contract for community real property signed only by Mr. Haueter is not binding on the marital community.

Generally, the signatures of both spouses are required to transfer community real property.[2] The joinder requirement extends to an agreement to list community real property for sale with a broker. *Whiting v. Johnson*, 64 Wn.2d 135, 141, 390 P.2d 985 (1964). If one spouse enters

---

[1]No listing agreement was ever entered into between the Haueters and Mr. Weybright.

[2]RCW 26.16.030(3) provides:
"Neither spouse shall sell, convey, or encumber the community real property without the other spouse joining in the execution of the deed or other instrument by which the real estate is sold, conveyed, or encumbered, and such deed or other instrument must be acknowledged by both spouses."

into a contract to sell, lease, or list for sale community realty without the other spouse joining, and the nonjoining spouse either (1) authorizes such or consents thereto, or (2) subsequently sanctions or ratifies the signing spouse's act, neither the nonsigning spouse nor the community may thereafter disaffirm it. *Whiting,* at 141.

Under RCW 26.16.030(4), which requires joinder by both spouses to *purchase* community real property, it has been held the requirement is met when there are sufficient facts from which an estoppel may be found. *Colorado Nat'l Bank v. Merlino,* 35 Wn. App. 610, 616, 668 P.2d 1304, *review denied,* 100 Wn.2d 1032 (1983). "A community is estopped to deny liability due to the failure of one spouse to join a transaction when one spouse permits the other to conduct the transaction, both have a general knowledge of the transaction, and both are ready to accept the benefits which may come from it." *Colorado Nat'l Bank,* at 616. Therefore, estoppel is a third exception to the requirement that both spouses sign the listing agreement.

Mr. Klaas first contends the requirement of joinder should not apply where both parties desire that the property be sold, because the purpose of the rule, to prevent a unilateral disposition of community property, is not served under these circumstances. *Colorado Nat'l Bank,* at 616. However, that case stated "Washington courts have held that RCW 26.16.030(4) [dealing with the joinder requirement to purchase community real property] should be construed strictly to shield the marital community from liability for the acts of one spouse acting alone." *Colorado Nat'l Bank,* at 619. We find this argument unpersuasive. Because community liability for the unilateral act of one spouse under the listing agreement would be the result of an exception to the joinder rule in this case, strict construction of the joinder rule furthers its purpose.

Second, Mr. Klaas argues that the exceptions of authorization, ratification or estoppel meet the requirement of joinder in this case despite the fact that Mrs. Haueter did not sign the listing agreement, nor did Mr. Haueter sign her

name under the general power of attorney he possessed.

The trial court made the following findings of fact relevant to whether application of the authorization, ratification or estoppel theories constitutes joinder in this case:

## XX.

Billee Haueter wanted to sell the apartment house as early as August 16, 1982, and did not change her mind in that regard up to and including the date the apartment house was sold on November 29, 1982.

## XXI.

At all times material hereto, Roy Haueter had authorization from Billee Haueter to sign documents for Billee Haueter as attorney–in–fact concerning all real estate matters, including the apartment house which is the subject of this lawsuit. Sometimes Roy Haueter signed Billee Haueter's name with the attorney–in–fact notation, and sometimes he signed her name without that notation. Billee Haueter had no objection to this.

## XXII.

Billee Haueter was not aware of the specific Exclusive Listing Contract signed by plaintiff and Roy Haueter on October 3, 1982 (plaintiff's Exhibit 1). Roy Haueter did not sign Billee Haueter's name to Plaintiff's Exhibit #1 either with or without the attorney–in–fact designation.

## XXIII.

Billee Haueter did not expressly or by implication authorize or consent to listing the apartment house in question for sale through plaintiff prior to October 3, 1982, when Roy Haueter signed the Exclusive Listing Contract with plaintiff (plaintiff's Exhibit 1).

## XXIV.

Billee Haueter did not, by her acts and conduct, subsequent to October 3, 1982, sanction or ratify the Exclusive Listing Contract signed by plaintiff and Roy Haueter (plaintiff's Exhibit 1).

A. Did Mrs. Haueter authorize Mr. Haueter to list the property with Mr. Klaas?

██ Authorization occurs when one spouse, prior to initiation of a transaction, indicates a willingness to allow the other to enter into a transaction. *Nichols Hills Bank v. McCool,* 104 Wn.2d 78, 83, 701 P.2d 1114 (1985). Authorization to purchase community real property may be found

from conduct disclosing knowledge and approval of the transaction, the subject property and the financial impact on the community. *Daily v. Warren,* 16 Wn. App. 726, 731, 558 P.2d 1374, *review denied,* 88 Wn.2d 1017 (1977). In *Daily,* at 731, the nonsigning spouse, Mrs. Warren, was found to have joined in the purchase of a tavern when:

> (1) Mrs. Warren knew her husband was interested in purchasing the tavern; (2) she inspected the tavern with an eye to exercising her right to approve or disapprove, as she had done in the past; (3) she expressed approval to Mr. Warren after she had seen the tavern; (4) she permitted Mr. Warren to proceed without her in further negotiations for its purchase; (5) she knew of and approved the use of community funds for the original money deposit; (6) she knew Mr. Warren had actually signed a new agreement to purchase for $200,000 or more and believed he had put an additional $30,000 of community funds into a partial down payment and had agreed to pay a substantial additional sum in January; (7) she knew she had been listed as a "partner" on liquor license applications; (8) she knew of the arrangement under which the two men started working at the tavern, and (9) she acknowledged the purchase would have been consummated had Jessiman not become ill.

Finding of fact 22 states Mrs. Haueter did not know of the listing agreement; finding of fact 23 states Mrs. Haueter did not authorize the listing of the property with Mr. Klaas. These findings are supported by substantial evidence in the form of Mr. and Mrs. Haueter's testimony at trial, thus they will not be disturbed on appeal. *Group Health Coop. of Puget Sound, Inc. v. Department of Rev.,* 106 Wn.2d 391, 397, 722 P.2d 787 (1986); *Thorndike v. Hesperian Orchards, Inc.,* 54 Wn.2d 570, 575, 343 P.2d 183 (1959).[3] Mr. Haueter stated he never discussed the Klaas

---

[3]The only evidence in the record to the contrary is a statement by Mr. Haueter when he was testifying on his belief that Mr. Klaas wanted to purchase the apartment building and his confusion over whether the offer of Mr. Klaas was an offer to purchase. The portion of the record referred to reads:

Q When you received this offer on October 7, 1982, was there any question in your mind that Mr. Klaas wanted to purchase the apartment building?

A [Mr. Haueter] I was positive he was buying our apartment building.

listing agreement with Mrs. Haueter. Mrs. Haueter also denies Mr. Haueter ever discussed it with her and asserts she had no knowledge of the listing agreement until she was sued. Substantial evidence supports the trial court's finding that Mrs. Haueter did not expressly authorize the Klaas listing agreement.

Here, Mr. Klaas argues for a broader interpretation of authorization. He argues Mrs. Haueter's authorization to Mr. Haueter to sell the community real property gave Mr. Haueter authority, under agency principles, to list the property with Mr. Klaas. He asserts the principles of agency apply to husband and wife, and that an agent given authority to sell real property also has the authority to employ a real estate broker. *Makousky, Inc. v. Stern*, 285 Minn. 202, 172 N.W.2d 317 (1969). Washington courts have relied on agency law in developing the concept of ratification in community property law and found the analogy appropriate. *Nichols Hills Bank*, at 84.

The Haueters counter that our Supreme Court has rejected the theory that general authorization is sufficient to create a community obligation. *Nichols Hills Bank v. McCool, supra,* held a wife did not consent to her husband's signing of a guaranty when she knew about the guaranty but expressed her objection to the agreement. The court further stated delegation of authority to manage community property does not cloak the managing spouse with authority to enter into a transaction that specifically requires the involvement of both parties; that authority to manage community assets did not give the husband authority to enter into a guaranty agreement. *Nichols Hills Bank,* at 82–83.

Here, Mrs. Haueter gave her husband a general power of

---

Q What was the next step in accomplishing the sale of the apartment building to Mr. Klaas?

A [Mr. Haueter] After this, after he had presented me with this offer I discussed it with my wife. I discussed it [with] Roger Kreimeyer, and Roger Kreimeyer was concerned that this offer was not on a regular type of sale agreement.

attorney to eliminate the necessity of her physical presence to sign documents, but, she stated Mr. Haueter was not to sign her name unless he discussed it with her prior to signing. Although Mr. Haueter did discuss the *Kreimeyer* exclusive listing agreement with Mrs. Haueter before he signed Mrs. Haueter's name, he did not discuss the *Klaas* exclusive listing agreement with Mrs. Haueter and he did not sign her name to it.

Mr. Klaas would have the court extend Mrs. Haueter's specific authorization to Mr. Haueter to sign her name to the Kreimeyer listing to cover authorization to bind the community to the Klaas listing. *Nichols Hills Bank v. McCool, supra,* precludes such a broad interpretation of authorization constituting joinder under RCW 26.16.030(4) especially in view of the policy from *Colorado Nat'l Bank v. Merlino, supra,* to construe the joinder requirement strictly to protect the marital community.

B. Did Mrs. Haueter ratify the Klaas listing agreement?

A spouse who does not initially consent to a transaction is prohibited from disaffirming it if the spouse subsequently ratifies the transaction. *Nichols Hills Bank,* at 84. Ratification is affirmance by a person of a prior act which did not bind him but which was done on his account. *Nichols Hills Bank,* at 85. Knowing that the other spouse entered a guaranty agreement yet failing to repudiate it is not sufficient affirmance to constitute ratification. *Nichols Hills Bank,* at 85.

Mr. Klaas argues that Mrs. Haueter ratified the Klaas listing agreement when she agreed to sell the community real property, authorized signature on the Kreimeyer listing agreement and agreed to the Weybright broker commission in the purchase and sale agreement which was also provided for in the Klaas listing agreement.

The Haueters argue that Mrs. Haueter did not know of the Klaas listing agreement or her husband's unauthorized signing of the agreement, and had no contact with Mr.

Klaas which would amount to affirmance of Mr. Haueter's unauthorized act. The Haueters argue *Smith v. Stout,* 40 Wn. App. 646, 700 P.2d 343, *review denied,* 104 Wn.2d 1009 (1985) controls on this issue.

In *Smith v. Stout, supra* at 650, the court said:

> While such a defense is judicially recognized [estoppel based on ratification or acquiescence], it requires participation by the nonsigning spouse in the transaction or evidence of a willingness on the part of the spouse to accept the transaction with all its terms, thus leading the purchasers to believe the nonsigning spouse approves the transaction.

Where the nonsigning spouse did not know of or join in the purchase agreement, merely knowing it was necessary to sell the land was not sufficient evidence that the nonsigning spouse was ready to accept the benefits of an agreement entered into by the other spouse. *Smith v. Stout, supra* at 650. The court noted this was particularly true when the nonsigning spouse had already signed another agreement to sell to different purchasers.

Here the fact that Mrs. Haueter did not know of the Klaas listing agreement indicates she did not affirm it. Also, signing the purchase and sale agreement giving Mr. Weybright a broker's commission would not indicate Mrs. Haueter was willing to accept the benefits of the Klaas listing agreement. The Klaas listing agreement was not referenced in the purchase and sales agreement and since Mr. Klaas did not procure the sellers, there was nothing in the agreement or sales transaction to inform Mrs. Haueter that there was a Klaas listing agreement.

We hold Mrs. Haueter did not ratify the Klaas listing agreement.

### C. Is Mrs. Haueter estopped to deny the Klaas listing agreement?

■ The legal test for estoppel is that estoppel may be successfully argued against a nonsigning spouse if the nonsigner, by his or her acts, leads the purchasers into a false position, to their detriment. *Nichols Hills Bank,* at 85;

*Campbell v. Webber,* 29 Wn.2d 516, 522, 188 P.2d 130 (1947). In *Campbell,* at 524, one spouse had not signed the earnest money agreement but had attended the sale negotiations and indicated willingness to abide by the other spouse's decision to sell.

Here, Mrs. Haueter had no contact with or knowledge of Mr. Klaas during the listing or the sale of the property by another realtor. Therefore, her acts cannot be the basis of estoppel. No exception to the joinder requirement has been proven, hence there is no community liability on the Klaas listing agreement.

D. The Haueters' request for attorney fees.

Under RAP 18.1, the Haueters request attorney fees of $3,640 and costs on appeal. Mr. Klaas argues the Haueters have cited no authority for such an award and were not the prevailing party at the trial court level. Mr. Klaas asserts that an argument unsupported by cited authority and relevant parts of the record should not be considered on appeal. He cites RAP 10.3(a)(5) and *State v. Van Auken,* 77 Wn.2d 136, 142, 460 P.2d 277 (1969) as his authority.

RAP 18.1(a) provides: "If applicable law grants to a party the right to recover reasonable attorney fees or expenses on review, the party should request the fees or expenses as provided in this rule." Absent a contractual provision, statutory provision or well recognized principle of equity to the contrary, a court has no authority to award attorney fees to the prevailing party. *State ex rel. Macri v. Bremerton,* 8 Wn.2d 93, 113–14, 111 P.2d 612 (1941); *Herzog Aluminum, Inc. v. General Am. Window Corp.,* 39 Wn. App. 188, 191, 692 P.2d 867 (1984).

The Klaas exclusive listing contract provided that Mr. Haueter would pay Mr. Klaas reasonable attorney fees and all costs of collection in the event Mr. Klaas employed an attorney to enforce the contract. Mr. Klaas received a judgment against Roy Haueter for $8,604.58 for Mr. Klaas' attorney fees and collection costs.

In *Meenach v. Triple "E" Meats, Inc.,* 39 Wn. App. 635,

640, 694 P.2d 1125, *review denied*, 103 Wn.2d 1031 (1985), the court applied RCW 4.84.330.[4] *Meenach*, at 640, defined a prevailing party as one who receives a favorable final judgment. Where there is an action based on a contract, RCW 4.84.330 provides that the prevailing party shall be entitled to attorney fees whether he is the party specified in the contract or not. *Meenach*, at 640. The fact that the respondents argued at trial that there was no contract and consequently no breach did not prevent their recovery of attorney fees on appeal. *Meenach*, at 640–41. The court held the statute does not distinguish between those who sue and those who are sued on the contract. *Meenach*, at 641.

 Mr. Klaas argues the Haueters are not prevailing parties because at trial Mr. Haueter was found separately liable and his separate liability is not contested in this appeal. However, the community of Mr. and Mrs. Haueter prevailed at trial and has prevailed on this appeal. Were we to hold otherwise, Mr. Klaas would be entitled to attorney fees on appeal. We hold the community of Mr. and Mrs. Haueter is entitled to an award of $3,640 attorney fees on appeal, which we find reasonable.

---

[4]RCW 4.84.330 provides:

"In any action on a contract or lease entered into after September 21, 1977, where such contract or lease specifically provides that attorney's fees and costs, which are incurred to enforce the provisions of such contract or lease, shall be awarded to one of the parties, the prevailing party, whether he is the party specified in the contract or lease or not, shall be entitled to reasonable attorney's fees in addition to costs and necessary disbursements.

"Attorney's fees provided for by this section shall not be subject to waiver by the parties to any contract or lease which is entered into after September 21, 1977. Any provision in any such contract or lease which provides for a waiver of attorney's fees is void.

"As used in this section 'prevailing party' means the party in whose favor final judgment is rendered."

The trial court's judgment that the Klaas listing agreement is not binding against the community is affirmed.

GREEN and MUNSON, JJ., concur.