IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | |
|---|---|
| PATRICK PULIDO, an individual, | No. 85307-4-I |
| Appellant, | |
| v. | UNPUBLISHED OPINION |
| GREGORY EATON, an individual. | |
| Respondent. | |

BOWMAN, J. — Patrick Pulido and Gregory Eaton executed a "Residential Purchase and Sale Agreement" (RPSA) to convey Pulido real property in Whatcom County. After the parties failed to timely close the sale, Pulido sued, alleging breach of contract. The trial court dismissed Pulido's lawsuit at summary judgment and awarded Eaton attorney fees. Because Pulido fails to show he suffered damages, we affirm the trial court and award Eaton attorney fees on appeal.

FACTS

In August 2021, Eaton agreed to sell Pulido his manufactured home on Sunset Drive in Birch Bay. On August 21, 2021, the parties executed a RPSA setting the purchase price at $229,000, providing for an earnest money deposit of $2,000, and scheduling a closing date of September 24, 2021. The RPSA included a financing addendum, making Pulido's purchase of the property contingent on him obtaining a Federal Housing Administration (FHA) loan. The financing addendum also required Eaton to "permit inspections required by [the]

lender, including but not limited to structural, pest, heating, plumbing, roof, electrical, septic, and well inspections." Pulido applied for the FHA loan on August 26, 2021. The FHA locked Pulido's interest rate at 2.75 percent on his $224,852 loan.

The FHA required the vehicle title to the manufactured home be eliminated.[1] So, on September 1, 2021, the parties executed a "Manufactured Home Addendum" to the RPSA that reads:

> **Title Elimination.** The certificate of ownership ("Title") to the manufactured home on the Property shall be eliminated as provided for in Washington Administrative Code Section 308-56A-505 prior to Closing. Seller shall, at Seller's expense, make a good faith effort to eliminate Title and provide notice to Buyer thereof no less than . . . 5 days . . . before Closing. If Seller fails to timely eliminate title and give notice thereof, then this Agreement shall terminate and the Earnest Money shall be refunded to Buyer.

The parties also agreed that Pulido had 20 days to inspect the home for compliance with the Department of Labor and Industries' standards for manufactured homes and that Eaton had 15 days to remedy any deficiencies.

Hayman Engineering inspected the home. On September 2, 2021, it issued a notice of noncompliance. It determined that the home did not meet HUD[2] standards for a permanent foundation, which needed around $2,795 in repairs to bring it into compliance. Meanwhile, the parties also learned that to eliminate title, Eaton needed to submit updated building plans showing that he

---

[1] Under RCW 65.20.040, "[i]f a manufactured home is affixed to land that is owned by the homeowner, the homeowner may apply to the department [of licensing] to have the title to the manufactured home eliminated." Once the homeowner has eliminated title, "the manufactured home shall be treated the same as a site-built structure and ownership shall be based on ownership of the real property through real property law." RCW 65.20.030; *see also* WAC 308-56A-505.

[2] United States Department of Housing and Urban Development.

properly permitted a small addition to the home. A Whatcom County planner estimated that the process would take "probably [three] weeks maybe sooner."

On September 11, 2021, Eaton proposed an addendum to the RPSA, increasing the purchase price to $236,000 to cover the extra costs. On September 16, Pulido's real estate agent learned from the county that Eaton had not yet applied for building permits and asked Eaton's agent for an update regarding the title elimination process. Eaton's agent said he spoke to Eaton, who was "moving forward with the Title elimination" as soon as Pulido responded to the proposed price increase.

Pulido refused to sign the addendum raising the purchase price. And Eaton failed to eliminate title to the property. As a result, the parties did not close the sale on September 24, 2021, and Eaton returned Pulido's earnest money.

On October 14, 2021, Pulido sued Eaton for breach of contract, seeking damages and specific performance. On June 3, 2022, Eaton moved for summary judgment, arguing that Eaton did not breach the contract, that specific performance was unwarranted because there was an adequate remedy at law, and that Pulido suffered no damages because he received a refund of his earnest money—the specified contractual remedy. The court denied summary judgment in part because "[a] material issue of disputed fact remains as to whether [Eaton] acted in 'good faith to eliminate Title . . . ,' thereby breaching a duty to [Pulido]." But it dismissed the specific performance claim.

On June 23, 2022, Pulido purchased property on Hazel Lane in Blaine for $210,000. To finance the purchase, Pulido obtained a bank loan with an interest rate of 4.125 percent.

On March 10, 2023, Eaton again moved for summary judgment, arguing that even assuming he breached the RPSA, Pulido could not show damages. Pulido argued he suffered damages because he had to pay a higher interest rate for his new loan and incurred temporary living costs as a result of Eaton's breach. On April 21, the trial court granted Eaton's motion and dismissed Pulido's claim. On May 23, it entered an order awarding Eaton attorney fees and costs. And on June 16, the court entered judgment against Pulido.[3]

Pulido appeals.

ANALYSIS

Pulido argues that the trial court erred by dismissing his breach of contract claim because he suffered reasonably foreseeable damages from Eaton's breach. He also asserts the court erred by awarding Eaton attorney fees and costs. Eaton requests attorney fees and costs on appeal.

We review rulings on summary judgment de novo, performing the same inquiry as the trial court. *Ellis v. City of Seattle*, 142 Wn.2d 450, 458, 13 P.3d 1065 (2000). Summary judgment is appropriate only when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." CR 56(c). We view all facts and draw all reasonable inferences in the light most favorable to the nonmoving party. *Ellis*, 142 Wn.2d at 458. We

---

[3] The parties did not provide a copy of the judgment on appeal but they do not dispute its contents.

4

will grant summary judgment only if, from all the evidence, reasonable persons could reach but one conclusion. *Id.* A defendant can prevail on a motion for summary judgment by challenging the plaintiff's ability to establish an essential element of a cause of action. *See Young v. Key Pharms., Inc.*, 112 Wn.2d 216, 225, 770 P.2d 182 (1989). The defendant bears the initial burden of showing a lack of evidence. *Id.* at 225 n.1. The burden then shifts to the plaintiff to establish the essential elements of their claim. *Id.* at 225. If the plaintiff fails to do so, the defendant is entitled to summary judgment. *Id.*

1. Breach of Contract

To prevail on a breach of contract claim, a plaintiff must show that a contract exists, that the contract imposes a duty, that the defendant breached that duty, and that the breach proximately caused damage to the plaintiff. *Nw. Indep. Forest Mfrs. v. Dep't of Labor & Indus.*, 78 Wn. App. 707, 712, 899 P.2d 6 (1995). " '[C]ontract damages are ordinarily based on the injured party's expectation interest and are intended to give the injured party the benefit of its bargain' "—to put the injured party in as good a position as they would have been had the contract been performed. *Brotherton v. Kralman Steel Structures, Inc.*, 165 Wn. App. 727, 734, 269 P.3d 307 (2011) (quoting *Panorama Vill. Homeowners Ass'n v. Golden Rule Roofing, Inc.*, 102 Wn. App. 422, 427, 10 P.3d 417 (2000)); *Eastlake Constr. Co. v. Hess*, 102 Wn.2d 30, 39, 686 P.2d 465 (1984).

Expectation damages are losses that the parties could reasonably foresee at the time they made the contract as a probable result of breaching the contract.

*Larsen v. Walton Plywood Co.*, 65 Wn.2d 1, 6, 390 P.2d 677 (1964); *see Colom.*

*Park Golf Course, Inc. v. City of Kennewick*, 160 Wn. App. 66, 90-91, 248 P.3d

1067 (2011).  A loss may be foreseeable as a probable result of a breach of a

contract if the loss follows from the breach

> (a) in the ordinary course of events, or
> (b) as a result of special circumstances, beyond the ordinary course
> of events, that the party in breach had reason to know.

RESTATEMENT (SECOND) OF CONTRACTS § 351(2) (AM. LAW INST. 1981).

Foreseeability is a question of fact unless reasonable minds could not differ.

*Schooley v. Pinch's Deli Mkt., Inc.*, 80 Wn. App. 862, 875, 912 P.2d 1044 (1996),

*aff'd*, 134 Wn.2d 468, 951 P.2d 749 (1998).

Generally, a buyer's expectation damages arising from a seller's breach of

a RPSA is "the difference between the contract price and the fair market value of

the property at the time of the breach."  *Friebe v. Supancheck*, 98 Wn. App. 260,

269, 992 P.2d 1014 (1999); *see also* 18 WILLIAM B. STOEBUCK & JOHN H. WEAVER,

WASHINGTON PRACTICE:  REAL ESTATE § 16.7 (2d ed. Apr. 2023).  Pulido does not

seek such damages.  Instead, he argues his damages are the increased interest

rate he received on his loan to purchase the Hazel Lane property and the

temporary living costs he incurred between the closing date for the Sunset Drive

property and when he purchased the new property.  We address each argument

in turn.

A.  Increased Interest Rate

Pulido argues that the increased interest rate on the loan he obtained to

purchase the Hazel Lane property was foreseeable as a probable result of

Eaton's breach. We disagree.

Citing *Eastlake* and *Lincor Contractors, Ltd. v. Hyskell*, 39 Wn. App. 317, 692 P.2d 903 (1984), Pulido claims that "Washington courts recognize the difference in interest rates as recoverable damages provided such damages are foreseeable." In *Eastlake*, our Supreme Court considered the appropriate measure of damages when a breach in a construction contract resulted in a delay in performance. 102 Wn.2d at 38-39. It held that an injured party may recover either " '(a) the diminution in the market price of the property caused by the breach, or (b) the reasonable cost of completing performance or of remedying the defects if that cost is not clearly disproportionate to the probable loss in value.' " *Id.* at 47-48 (quoting RESTATEMENT § 348). And in *Lincor*, a finance company threatened property owners that if they did not fire their contractor, it would not disperse construction loan funds. 39 Wn. App. at 319-20. The property owners then sued the contractor for, among other things, the cost of the increased interest rate on a new construction loan. *Id.* at 320. Without discussing whether such damages were recoverable, we concluded that the property owners failed to show that they actually paid a higher interest rate on a new loan. *Id.* at 322.

Neither *Eastlake* nor *Lincor* addresses whether an increase in interest rates is a foreseeable loss flowing from a seller's breach of a RPSA. More analogous to this case is *Smith v. Stout*, 40 Wn. App. 646, 700 P.2d 343 (1985). In *Smith*, a seller agreed to sell community farmland to two separate parties. *Id.* at 648-49. The buyer who did not purchase the property sued the seller for

7

breach of contract, asserting damages equal to the difference between the low interest rate contemplated in the original sales contract and the prevailing interest rate on financing another property. *Id.* at 649, 651. We concluded that "[t]he difference between rates of interest, without more, is not sufficiently connected with the sale to foreseeably flow from the alleged breach." *Id.* at 651 (citing *Donovan v. Bachstadt*, 91 N.J. 434, 453 A.2d 160 (1982)); *see also Thompson v. Hanson*, 6 Wn. App. 1, 5, 491 P.2d 1065 (1971). We contemplated that there are generally two situations when a change in interest rates may be recovered as damages: (1) as incidental damages to the granting of specific performance and (2) when the purchaser incurs a higher interest loan as a result of delay in purchasing the same property. *Id.*

Like the purchaser in *Smith*, Pulido fails to show the increased interest rate on his new loan almost a year after the alleged breach of the RPSA was connected enough with the sale to reasonably flow from the breach. Pulido does not seek damages incidental to the granting of specific performance and he did not commit to a higher interest loan to purchase the same property.

Pulido argues his case is distinguishable from *Smith*. According to Pulido, the difference in interest rates was a special circumstance that the parties contemplated in the RPSA. In support of his argument, Pulido points to a clause in the financing addendum that reads:

> **EXTENSION OF CLOSING.** If, through no fault of Buyer, lender is required by 12 [C.F.R.] [§] 1026 to give corrected disclosures to Buyer due to (a) a change In the Annual Percentage Rate ("APR") of Buyer's Loan(s) by .125 [percent] or more for a fixed rate loan or .250 [percent] or more for an adjustable rate loan; (b) a change in the loan product; or (c) the addition of a prepayment penalty, then

upon notice from Buyer, the Closing Date shall be extended for up to [four] days to accommodate the requirements of Regulation Z of the Truth In Lending Act [(15 U.S.C. §§ 1601-1667f)].  This paragraph shall survive Buyer's waiver of this Financing Contingency.

But that paragraph does not reflect an acknowledgment by the parties that Pulido may need to secure a new property at a higher interest rate in the event of a breach.  Instead, it amounts to notice from the lender that the closing date may be extended if an increase in interest rates for the loan to purchase Eaton's property requires the lender to issue corrected disclosures.

The trial court did not err by determining that the increased interest rate on the loan Pulido obtained to purchase the Hazel Lane property was not a recoverable foreseeable loss flowing from Eaton's breach of the RPSA.

B.  Temporary Living Costs

Pulido also argues that the trial court erred because "the record sufficiently demonstrated that [he] suffered damages by way of his temporary living costs." Pulido contends he incurred around $6,230 in rent and other living costs between September 24, 2021 (the closing date of the Sunset Drive property) and June 23, 2022 (the purchase of the Hazel Lane property).

Pulido acknowledges that he had to pay living costs regardless of Eaton's breach.  So, he fails to show that the living costs flowed from the breach of the RPSA.  Likewise, a party is not entitled to more than he would have received had the contract been performed.  *See Lincor*, 39 Wn. App. at 321 (quoting *Platts v. Arney*, 50 Wn.2d 42, 46, 309 P.2d 372 (1957)).  And Pulido concedes that his

9

temporary living costs were less than they would have been if the contract were performed.

Still, citing no authority in support of his argument, Pulido argues that he suffered damages because had Eaton not breached the RPSA, Pulido would have made only 360 monthly payments toward the mortgage as of the closing date. But, as a result of the breach, he is now obligated to pay 360 monthly payments under the new loan plus the rent he paid between the closing date and the date he purchased the new property. But, as discussed above, Pulido's purchase of the Hazel Lane property and the terms of that loan are too far removed from the breach to be foreseeable.

The trial court did not err by determining that Pulido's temporary living expenses did not foreseeably flow from Eaton's breach of the RPSA.

2. Attorney Fees and Costs

Eaton asks for attorney fees and costs on appeal. Generally, when a statute authorizes fees in the trial court, those fees are also available on appeal. *SEIU Healthcare Nw. Training P'ship v. Evergreen Freedom Found.*, 5 Wn. App. 2d 496, 515, 427 P.3d 688 (2018). RCW 4.84.330 authorizes the award of attorney fees and costs to the prevailing party in an action enforcing the provisions of a contract if the contract specifically provides for attorney fees.

Here, the RPSA provides that "if Buyer or Seller institutes suit against the other concerning this Agreement, . . . the prevailing party is entitled to reasonable attorneys' fees and expenses." Because Eaton is the prevailing party, we award

him his appellate attorney fees and costs subject to compliance with RAP 18.1.[4]

Because Pulido fails to show damages flowing from Eaton's breach of the RPSA, we affirm the trial court and award Eaton attorney fees and costs on appeal.

Brennan, J

WE CONCUR:

Coburn, J.                    Mann, J.

---

[4] Because we conclude that Eaton is the prevailing party, we do not address Pulido's argument that the trial court erred by awarding Eaton attorney fees below.