[No. 2589–2.   Division Two.   June 19, 1978.]

DAVID BARER, ET AL, *Respondents,* v. ALAN GOLDBERG, *Appellant,* JANICE GOLDBERG, *Respondent.*

*Odine H. Husemoen* (of *Walstead, Mertsching, Husemoen, Donaldson & Barlow*), for appellant.

*William L. Dowell* (of *Walker & Dowell*) and *R. Graham Cross,* for respondents.

SOULE, J.—This is an action to secure repayment of a loan. The two principal issues presented pertain to the statute of limitations and the applicability of the long–arm statute to the third–party defendant, Janice Goldberg. We affirm the action of the trial court in granting judgment to the plaintiffs against Alan Goldberg, and also the granting of a judgment for contribution in favor of Alan Goldberg against Janice Goldberg.

Prior to May 5, 1969, defendant Alan Goldberg had married Janice Goldberg, the daughter of David and Dorothy Barer. The Goldbergs lived in California. The Barers lived in Washington. On May 5, 1969, Alan Goldberg telephoned David Barer and asked for $15,000 to invest in a business enterprise. Mrs. Barer immediately wrote a check on the Barers' joint bank account and sent it to Alan Goldberg. Janice Goldberg was then with her husband in California and was aware of the conversation between her husband and her father.

The trial court found that the advance was intended as a loan, not a gift; that Janice and Alan intended to repay the loan when it was granted and retained that intent at least until January of 1975 when they were divorced. For the purposes of the divorce, however, the Goldbergs apparently

treated the debt as barred by the California statute of limitations of 3 years. In any event, the obligation was not mentioned in the California decree which disposed of their substantial assets and debts. The Washington trial court specifically entered finding of fact No. 2.13, which reads:

*Intent, re: Repayment.* It was the intent of both parties that a speedy and rapid demand for repayment would not be made, because it was contemplated by the parties that it would take considerable time for the proposed business ventures, which consisted of the filming of pilot series, to get off the ground and become financially successful, and it was the intent of the parties that the defendant, Alan Goldberg, should be given a sufficient and indefinite time to develop these businesses before any demand for repayment would be made.

No demand was made while the parties lived in California. After the divorce was final, Alan Goldberg moved to Cowlitz County, arriving in the month of March 1975. Sometime in the month of April 1975, a formal demand for payment was made. This action was commenced by the Barers on April 30, 1975.

Alan Goldberg then brought a third–party action against Janice Goldberg seeking contribution. She was still in California. Service was obtained by the long–arm statute.

Apart from finding of fact No. 2.13 relating to the purpose of the loan and finding of fact No. 2.4 concerning the details of the telephone call and the sending of the check, finding of fact No. 2.11 is the only other finding of fact bearing on the contact of the Goldbergs with the State of Washington:

*Residence.* The defendant, Alan Goldberg, was a resident of the State of California prior to May 5, 1969, and continuing until March, 1975 when he moved to the State of Washington. Janice Goldberg on and prior to May 5, 1969, and continuing through the present, was a resident of the State of California. David Barer and Dorothy Barer at all times material hereto have been residents of the State of Washington. Alan Goldberg and Janice

Goldberg were married in the State of Washington, lived in the State of Washington prior to moving to California, visited David Barer and Dorothy Barer in the State of Washington at least annually and returned to the State of Washington for visits on a number of occasions since May 5, 1969.

No challenge is directed to any findings of fact. Alan Goldberg assigns error to conclusions of law Nos. 3.3 and 3.4 which read:

3.3 *Statute of Limitations.* The three–year statute of limitations is applicable to this action as this is not a written promise to repay money. The statute of limitations did not begin to run on May 5, 1969, when the money was advanced. In the absence of a formal demand for payment, the statute of limitations did not commence to run until a reasonable period of time had passed and said time is deemed to be three years. Accordingly, the statute of limitations did not commence to run until May 5, 1972. Hence, the action was timely filed and is not barred by the statute of limitations.

3.4 *Judgment.* Plaintiffs, David Barer and Dorothy Barer, are entitled to a judgment against Alan Goldberg for the sum of $15,000 plus their costs and statutory attorney's fees.

The sole question on the primary case is when the statute of limitations begins to run.

In the third–party action, cross appellant, Janice Goldberg, assigns error only to conclusion of law No. 3.1 which reads:

*Jurisdiction.* The Court has jurisdiction over both the defendant and third party defendant by virtue of the fact that said parties were visiting and doing business in the State of Washington prior to and subsequent to the time they borrowed the money on May 5, 1969.

The issues to be resolved by her appeal are first, what contacts are sufficient to justify the employment of the long–arm statute against Janice Goldberg and, second, whether the affidavit of service was filed in time to give the court jurisdiction.

STATUTE OF LIMITATIONS

■ Absent other facts, a loan evidenced merely by a check with the notation "loan" upon it is governed by the 3–year statute of limitations. *National Bank of Commerce v. Preston,* 16 Wn. App. 678, 558 P.2d 1372 (1977). Such a transaction normally is characterized as a demand loan and the statute begins to run when the loan is made. *Hopper v. Hemphill,* 19 Wn. App. 334, 575 P.2d 746 (1978).

■ However, an exception to the rule exists when delay in making the demand is contemplated by the parties at the time the contract is made and where speedy demand would violate the spirit of the contract. *Cochran v. Cochran,* 133 Wash. 415, 233 P. 918 (1925). Annot., 159 A.L.R. 1033, 1040, 1044, 1052–53 (1945).

Alan Goldberg argues that *Cochran* should be limited to its unique facts as an isolated case in the state of Washington, but we see no reason to do so. The principle upon which it was decided is generally recognized and in *Hopper v. Hemphill, supra,* our court has recently had occasion to observe, at page 335:

> If an actual notice or demand is required for a cause of action to accrue on a demand loan obligation, then the statute of limitations does not commence running until notice is given or demand is made, or until a reasonable time has elapsed.

The court further stated, at page 338:

> Unquestionably, parties to an agreement may so frame it as to make a preliminary demand prerequisite to a right of action . . .

In *Hopper,* the court was commenting upon an oral agreement. There is no requirement under our law that the agreement be in writing.

The intent of the parties appears in the record in the unchallenged finding of fact No. 2.13. We recognize that where it is the intent of the parties that an actual demand be made before the statute starts to run, one cannot indefinitely delay the accrual of the cause of action by deferring that demand. *See Edison Oyster Co. v. Pioneer Oyster Co.,*

22 Wn.2d 616, 157 P.2d 302 (1945); *Washington Security Co. v. State,* 9 Wn.2d 197, 213, 114 P.2d 965, 135 A.L.R. 1330 (1941). The maximum reasonable time for making the demand, which is a condition precedent to the cause of action, is generally held to be the number of years specified by the statute for bringing suit, and if no actual demand is made within the period of the statute of limitations, it will be presumed to have been made at the expiration of the statutory period thus starting the running of the statutory time. Authorities recognizing this principle are *Gossard v. Gossard,* 149 F.2d 111 (10th Cir. 1945); *Woolsey v. Trimble,* 18 F.2d 908 (6th Cir. 1927); *Massie v. Byrd,* 87 Ala. 672, 6 So. 145 (1889); *Johnston v. Keefer,* 48 Idaho 42, 280 P. 324 (1929); *Daugherty v. Wheeler,* 125 Ind. 421, 25 N.E. 542 (1890); *Smith v. Estate of Smith,* 91 Mich. 7, 51 N.W. 694 (1892). *See also* 51 Am. Jur. 2d *Limitation of Actions* § 128, at 697–98 (1970), and 159 A.L.R. 1021 (1945).

We adopt the principle that the demand must be made within a reasonable time and that in the absence of an actual demand, demand will be presumed to have been made at the expiration of the statutory period, which in this case was May 5, 1972. We hold that an action commenced on April 30, 1975, is within the statute of limitations and the action is not barred. The trial court's conclusions were therefore correct.

### Long-Arm Statute

■ Janice Goldberg appeals from the judgment requiring contribution. Jurisdiction was obtained by out-of-state service under the long-arm statute. RCW 4.28.185.[1] That statute is available to a third-party plaintiff who seeks contribution in connection with the defense of a primary

---

[1]RCW 4.28.185 reads in part:

"(1) Any person, whether or not a citizen or resident of this state, who in person or through an agent does any of the acts in this section enumerated, thereby submits said person, and, if an individual, his personal representative, to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any of said acts:

"(a) The transaction of any business within this state;"

action and the right of the third–party plaintiff for contribution against the third–party defendant is dependent upon the potential *primary* liability of the third–party defendant to the primary plaintiff. *Deutsch v. West Coast Mach. Co.,* 80 Wn.2d 707, 497 P.2d 1311 (1972), *cert. denied,* 409 U.S. 1009 (1973).

 ̄ The debt was presumptively a community debt, *National Bank of Commerce v. Green,* 1 Wn. App. 713, 463 P.2d 187 (1969), and the presumption is not challenged.

As we see it, the critical question to be answered is whether the *community* had sufficient contact with the State of Washington in connection with this transaction so that the primary plaintiffs, the Barers, could have maintained their action against the Goldbergs in this state by aid of the long–arm statute. We think the answer must be yes.

An extended review of the many cases decided under this statute is unnecessary. Many of them have been recently noted in *Peter Pan Seafoods, Inc. v. Mogelberg Foods, Inc.,* 14 Wn. App. 527, 544 P.2d 30 (1975). Individuals are subject to long–arm jurisdiction equally with corporations. *J.W. Sparks & Co. v. Gallos,* 47 N.J. 295, 220 A.2d 673 (1966).

█ There must of course be a connecting tie or link between the nonresident and the forum, but it is sufficient if a transaction is initiated outside the state *in contemplation that some phase of it will take place in the forum state. Griffiths & Sprague Stevedoring Co. v. Bayly, Martin & Fay, Inc.,* 71 Wn.2d 679, 430 P.2d 600 (1967). In that case, a single telephone call initiating the transaction was held to be sufficient. Unquestionably, the telephone call by Alan Goldberg initiated the transaction and contemplated that some phase of it would take place in the state of Washington. *Griffiths & Sprague* supports the conclusion that the telephone call was the requisite constitutionally minimum contact.

In *Tyee Constr. Co. v. Dulien Steel Prods., Inc.,* 62 Wn.2d 106, 115–16, 381 P.2d 245 (1963), the court noted

three basic factors which must coincide if jurisdiction is to be entertained:

(1) The nonresident defendant or foreign corporation must purposefully do some act or consummate some transaction in the forum state; (2) the cause of action must arise from, or be connected with, such act or transaction; and (3) the assumption of jurisdiction by the forum state must not offend traditional notions of fair play and substantial justice, consideration being given to the quality, nature, and extent of the activity in the forum state, the relative convenience of the parties, the benefits and protection of the laws of the forum state afforded the respective parties, and the basic equities of the situation.

(Footnote omitted.)

The first consideration has obviously been liberalized by *Griffiths & Sprague Stevedoring Co. v. Bayly, Martin & Fay, Inc., supra,* when it held that it is enough that it be contemplated that some part of the transaction take place in the forum state, rather than that the transaction be consummated therein. Clearly, the second requirement that the cause of action be connected with the transaction has been established.

The third requires some comment. Although the wife has at all material times been a resident of California, we note that she has frequently visited this state, thus it does not appear excessively inconvenient to require her to respond in this forum. We note further that she had knowledge of the transaction from the start and as a member of the community stood to benefit if the venture had been successful. Moreover, Alan Goldberg, as the manager of the community, was her agent. *Dizard & Getty v. Damson,* 63 Wn.2d 526, 387 P.2d 964 (1964).

A further basic equity reveals itself to us in the trial court's finding of fact No. 2.10, wherein the Washington trial court found that under California law, the debts and property are to be divided equally between the parties. The exhibits pertaining to the California proceedings demonstrate that the community property and the debts were

divided approximately equally, but that this one was omitted. We see nothing unfair about a request for equal division now and asserting jurisdiction to accomplish that which, in the light of hindsight, should have been accomplished in the California proceedings.

We note further, that insofar as receiving the benefits and the protection of the laws of the State of Washington, that Janice Goldberg has had such benefit in her ownership of Washington real property, title to which was confirmed in her by the divorce decree.

Under all the circumstances revealed by the record, we consider it reasonable and just to assert jurisdiction. Our notion of fair play and substantial justice is not offended.

Janice Goldberg's reliance on *Peter Pan Seafoods, Inc. v. Mogelberg Foods, Inc., supra,* is misplaced. It is true that in that case more than an initiatory telephone call was involved, but *Peter Pan* cited *Griffiths & Sprague* with approval and the only restriction noted by the court in *Peter Pan* was that jurisdiction must not be extended to a foreign buyer who purchases an item by telephone, mail, or in person, *and who has not initiated the transaction* nor actively carried on business negotiations within the state. Since Alan Goldberg did initiate the transaction, his activities are not within the exception.

*Peter Pan* does suggest some additional particular considerations which a court ought to have in mind in determining whether jurisdiction should be accepted.

1. The interest of the State in providing a forum for its residents or in regulating the business involved. The plaintiffs and original defendant are residents of this state. The interest of the State in providing a forum for them is evident.

2. The relative availability of evidence and the burden of defense in one place rather than another. With the two principal contending parties already in the state of Washington, these relationships would appear to be balanced in favor of accepting jurisdiction.

3. The ease of access to the alternative forum.

4. The avoidance of a multiplicity of suits and conflicting adjudications. It is apparent that with one action already in progress, it is desirable to resolve all of the problems in one action.

5. The extent to which the cause of action arose out of the defendant's local activities. Though the actual activity was not great, clearly the solicitation by Alan Goldberg on behalf of the community gave rise to the cause of action.

Applying the *Peter Pan* criteria, we see no contraindication to accepting jurisdiction.

Janice Goldberg directs our attention to *Quad Metals Corp. v. El Capitan Mercury Co.*, 8 Wn. App. 435, 506 P.2d 1332 (1973). That case is distinguishable in that the negotiations and formation of the contract all took place in California. Brochures and other materials were brought to the state of Washington by the *plaintiffs'* representatives, not by the defendant. The activity in this state was by the plaintiff in that its board of directors approved and executed the lease in Spokane. Telephone calls were made but there is no showing in the opinion that they were initiated by the defendants, and in the last analysis the court concludes that the transaction was for all practical purposes concluded in California *before* the minimal activity of the plaintiff itself in Spokane. The court also noted that the evidence necessary to determine the issues was to be found in the mine located in California and that on the facts, it would be unfair to accept jurisdiction in Washington.

■ Janice Goldberg argues that in this transaction, she had no personal contact with the state of Washington. Under the principle announced in *Bowen v. Bateman,* 76 Wn.2d 567, 458 P.2d 269 (1969), in which the contact of one out–of–state business partner was held sufficient connection to assert jurisdiction over the other business partner who had no personal contact, we hold that the transaction by the husband as manager of the community, is all that is necessary to subject the wife to jurisdiction, particularly where she had knowledge of the transaction.

482

■ Lastly, Janice Goldberg argues that the affidavit of service required by RCW 4.28.185(4) was not timely filed and cites *Hatch v. Princess Louise Corp.*, 13 Wn. App. 378, 534 P.2d 1036 (1975). In that case, judgment was taken in June of 1974. The statutory affidavit was not signed until October 29, 1974, and filed the next day. The court noted that substantial compliance is sufficient, but in that case there was literally no compliance. The judgment was void because there was no affidavit provided before the entry of judgment. In the case before us, the affidavit did exist and was filed before the trial commenced. No particular time of filing is required as long as it precedes the judgment. *Cf. Golden Gate Hop Ranch, Inc. v. Velsicol Chem. Corp.*, 66 Wn.2d 469, 403 P.2d 351 (1965).

We therefore affirm the two judgments of the trial court.

REED, A.C.J., and PETRIE, J., concur.

Reconsideration denied July 11, 1978.

Review denied by Supreme Court November 3, 1978.