[No. 5649–0–III.   Division Three.   January 24, 1985.]

T. J. MEENACH, JR., ET AL, *Appellants,* v. TRIPLE "E" MEATS, INC., ET AL, *Defendants,* GORDON L. EICKERMAN, ET AL, *Respondents.*

636

*Terence R. Whitten, Mary McIntyre–Cecil,* and *Lukins & Annis, P.S.,* for appellants.

*Glen A. Harlow* and *Underwood, Campbell, Brock & Cerutti, P.S.,* for respondents.

GAVIN, J.*—On January 29, 1981, Mr. and Mrs. Gordon Eickerman executed a listing agreement in which they hired Mr. T. J. Meenach to aid them in selling their business known as Triple "E" Meats, Inc. Mr. Meenach was to receive a 7 percent commission if the property was sold within 185 days. In addition to expending personal efforts to sell the property, Mr. Meenach registered it with the Multiple Listing Service. Pursuant to that listing, Mr. Kestell, another realtor, contacted Pacific Security Companies as a potential purchaser. Pacific Security offered $490,000 for the purchase of the business and, to facilitate the sale, Mr. Meenach and Mr. Kestell agreed to reduce their commission to 6 percent. Mr. and Mrs. Eickerman accepted the offer on May 7, and May 15 was set as the closing date. Upon delivery of the closing papers, Mr. and Mrs. Eicker-

---

*Judge F. James Gavin is serving as a judge pro tempore of the Court of Appeals pursuant to RCW 2.06.150.

man refused to sign alleging the papers were not as agreed. The transaction was never closed.

Thereafter, Mr. and Mrs. Eickerman undertook to personally sell the property. On July 23, Mr. and Mrs. Eickerman accepted an offer from Sea Kist Foods, Ltd., and on that date the parties signed a stock purchase agreement.

On September 23, Mr. Meenach and Mr. Kestell sued Mr. and Mrs. Eickerman and Triple "E" Meats, Inc., to recover their real estate brokers' commissions basing their suit upon theories of breach of contract and intentional tortious interference with a contract. The jury returned the following verdict:

VERDICT FORM A

1. We, the jury, find for the plaintiffs in the sum of $-0- (zero).

2. Do you find that the defendants Eickerman breached the agreement to pay commission dated May 7, 1981, or the commercial listing contract dated January 29, 1981?

_____ Yes  ___No___ No

The jury did not use "VERDICT FORM B" which provided: "We, the jury find for the defendants."

In addition, during deliberation, the jury, by written note, asked the following question:

May we award a dollar amount that is less than the commission due from the listing agreement or from the sale agreement?

In response, the trial judge answered "YES".

Appellants' counsel did not object to the verdict at the time it was received, but waited until after the jury was discharged and objected pursuant to a motion for judgment n.o.v. The court, in interpreting the verdict, dismissed the breach of contract claims, but awarded judgment against respondents for interference with contractual relations in the amount of "$0". Appellants appeal denial of their motion for judgment n.o.v.[1]

---

[1] We note that appellants fail to set forth any assignments of error in their

*Was the verdict for the plaintiff or the defendant, or so inconsistent that resolution of the ultimate issue is impossible to determine?*

We hold the verdict to be a defense verdict and further find no inconsistency making the jury's resolution of the ultimate issue impossible to determine. Whether a plaintiff's verdict form with "$0" is a defense verdict is not a new issue.

Courts have construed such a verdict in four ways. Some courts hold the verdict is invalid and order a new trial. Other courts conclude it is a defense verdict only if there is no evidence in the record of damages. Still other courts construe such a verdict as one for the defendant. Finally, some courts hold it is a verdict for the plaintiff. *See* Annot., 116 A.L.R. 828 (1938); Annot., 49 A.L.R.2d 1328 (1956).

*Miles v. F.E.R.M. Enters., Inc.,* 29 Wn. App. 61, 65, 627 P.2d 564 (1981).

In *Miles,* the court reversed a finding of a defense verdict on a plaintiff's verdict form with a finding of "0" damages. Since the case was a civil rights case, damages were presumed and the case was remanded to the trial court for a determination of nominal damages. *Miles,* at 67, further indicates a determination of defendant's or plaintiff's verdict must be based upon the instructions and the record to "discern the intent of the jury . . ." *See also Sheldon v. Imhoff,* 198 Wash. 66, 87 P.2d 103 (1939), in which the jury signed a plaintiff's verdict form but entered "none" in the spaces for dollar amounts. On appeal, the verdict was upheld as a defense verdict because it was "clear that the jury intended to find against the complainants in all causes of action involved in the two suits . . ." *Sheldon,* at 70. In *Haney v. Cheatham,* 8 Wn.2d 310, 325, 111 P.2d 1003 (1941), a verdict for plaintiff in the amount of $1 in a per-

brief as required by RAP 10.3(a)(3). Although this court need not consider an alleged error to which no assignment of error has been made, we feel the issues presented are of such significance that they should be addressed. *See Painting & Decorating Contractors of Am., Inc. v. Ellensburg Sch. Dist.,* 96 Wn.2d 806, 638 P.2d 1220 (1982); *Hackler v. Hackler,* 37 Wn. App. 791, 683 P.2d 241 (1984).

sonal injury action was held to be "a verdict for the defendant . . ."

■ While cases from other jurisdictions are widely divergent, the best rule is to view the verdict in light of the instructions and the record to see if the clear intent of the jury can be established. A decision that such a verdict must be the same in all cases is too inflexible and does not give due regard to the intent of the jury.

Appellants cite *Blue Chelan, Inc. v. Department of Labor & Indus.*, 101 Wn.2d 512, 681 P.2d 233 (1984), in support of their contention that the verdict is inconsistent and a new trial should be ordered. We do not believe *Blue Chelan* holds that whenever there are inconsistent jury findings a new trial must be ordered. Although *Blue Chelan* involved specific interrogatories to the jury comprising a special verdict, it is applicable to the present case. Therein the court found "the jury's answers [to be] irreconcilably inconsistent" and it was "impossible to determine" the jury's intent. *Blue Chelan*, at 515.

> *Were the jury's findings so irreconcilably inconsistent that it is impossible to determine whether they intended a verdict for the defendant or for the plaintiff?*

■ It cannot be disputed that the jury found neither money damages, nor breach of either the agreement or the commercial listing contract. Although the intent of the jury regarding the claim of intentional interference with contract is disputed, it is neither impossible nor difficult to determine their intent from the record. By notation, the jury has clearly indicated on instructions 8 and 9 there was no intentional interference with the contract. Although these instructions are neither special verdict forms nor interrogatories, the notations aid in ascertaining the jury's intent. In both instructions, the jury has written the word "No" immediately preceding the element of intentional interference.

Neither instruction 31 nor the written question asked by

the jury during deliberations (concerning an award of a dollar amount less than the commission) creates an irreconcilable inconsistency making it impossible to determine the jury's intent. The record establishes an intention to reach a verdict for the defendants. Moreover, counsel for appellant did not object at the time the verdict was read, nor were exceptions taken to instruction 31 or the written question from the jury.

*Should respondents be awarded attorney fees for trial and/or the appeal?*

■ Respondents ask for an award of attorney fees for the trial. They neither asked for attorney fees at trial nor was the reasonableness of their fees submitted for determination at trial. "'Issues not raised before the trial court will not be considered for the first time on appeal.'" *State ex rel. Graham v. San Juan Cy.*, 102 Wn.2d 311, 317, 686 P.2d 1073 (1984); *Ruddach v. Don Johnston Ford, Inc.*, 97 Wn.2d 277, 281, 644 P.2d 671 (1982); *Brown v. Safeway Stores, Inc.*, 94 Wn.2d 359, 369, 617 P.2d 704 (1980).

Respondents ask for an award of attorney fees and costs on appeal pursuant to RCW 4.84.020 and RCW 4.84.330. RAP 18.1(a) allows an award of reasonable attorney fees if "applicable law grants . . . the right to recover reasonable attorney fees . . ." RCW 4.84.330 provides for an award of attorney fees to a prevailing party in an action to enforce the provisions of a contract if the contract specifically provides for attorney fees. A prevailing party is one who receives a favorable final judgment. Both the commercial listing agreement and the earnest money agreement provide for payment of reasonable attorney fees if an attorney is employed to enforce any of the terms of the agreements.

■ Appellants' suit is based "on a contract". They seek to recover their commission pursuant to the terms of the contract. RCW 4.84.330 provides that the prevailing party *shall* be entitled to attorney fees "whether he is the party specified in the contract . . . or not . . ." Appellants contend respondents cannot recover attorney fees because

respondents at trial argued there was no contract and consequently no breach. The statute does not distinguish between those who sue and those who are sued on an alleged contract.

Appellants cite *Chan v. Smider,* 31 Wn. App. 730, 644 P.2d 727 (1982), *Trans West Co. v. Teuscher,* 27 Wn. App. 404, 618 P.2d 1023 (1980), and *Ellis v. Butterfield,* 98 Idaho 644, 570 P.2d 1334 (1977), in support of their position. Those cases are distinguishable. In *Chan,* the earnest money agreement did not contain an attorney fees provision but the real estate contract did. Attorney fees were denied because the earnest money agreement, not the real estate contract, was specifically enforced. *Trans West Co.* involved an initial action by a vendor on a judgment for unpaid contract installments and subsequently an action for forfeiture. The court held, at page 410:

> [A]fter declaration of a forfeiture by the contract vendor, the vendor may recover attorney's fees necessary to pursue the forfeiture remedy if the contract so provides. It is not authority for allowing recovery of attorney's fees spent to obtain judgments for unpaid installments which are deemed satisfied as a matter of law.

Moreover, in neither case was RCW 4.84.330 in question. Similarly, there is no indication Idaho has a statute similar to RCW 4.84.330, making *Ellis* inapplicable.

Respondents, as prevailing parties, are granted reasonable attorney fees and costs on appeal in accordance with RAP 18.1.

The judgment of the trial court is affirmed. Respondents are awarded attorney fees and costs in the amount of $3,293.10.

McINTURFF, A.C.J., and THOMPSON, J., concur.

Review denied by Supreme Court April 15, 1985.