[No. 34507-9-I.    Division One.    July 3, 1995.]

DONALD W. HEWITT, M.D., *Appellant*, v. JOHN ARTHUR HEWITT, ET AL., *Respondents*.

---

[10]*In re Marriage of Griffin*, 114 Wn.2d 772, 791 P.2d 519 (1990).

*Neil Leavitt*, for appellant.

*James Donald Nelson*, and *Robert F. Lopez* (of *Betts, Patterson & Mines, P.S.*) for respondent.

COLEMAN, J. — In this case we are called upon to decide whether Washington courts may assume long-arm jurisdiction over two nonresident defendants where defendants personally committed no acts in Washington but were allegedly members of a Washington-based conspiracy to defame a plaintiff residing in Hawaii. Because we find that assumption of such jurisdiction violates principles of due process, we hold that jurisdiction over defendants does not lie.

Plaintiff Donald W. Hewitt, M.D., is a resident of Hawaii. Dr. Hewitt and Dorothy Hewitt were married on March 16, 1950, and divorced in 1992. Dorothy has Lou Gehrig's disease (Amyotropic Lateral Sclerosis) and is unable to speak or move. She is only able to communicate through the use of eye signals.

John Hewitt and Mary Jane Hewitt are the children of Dr. Hewitt and Dorothy Hewitt. John Hewitt resides with his wife Heidi Hewitt in King County, Washington. Mary Jane has been a resident of Multnomah County, Oregon since 1974. She owns no property within Washington and has not transacted any business here. Cindy Wagen worked in the Hewitts' home as a care manager for Dorothy. She has been a resident of Hawaii since 1982 and has never been to Washington.

Carla Keldie is a licensed practical nurse and provided care to Dorothy from February 1990 to June 1990 and again from December 1990 to July 1991. While on duty, Carla often received telephone calls for Dorothy and/or Cindy from John, Heidi, and Mary Jane. Cindy also often made phone calls to John, Heidi, and Mary Jane. During these calls, Cindy would relay information between Dorothy Hewitt and the other party. As Dorothy's nurse, Carla remained in the room during these calls.

Carla alleges in her affidavit that during phone calls in 1990, she overheard a plan being explained to Dorothy to move Dorothy to John and Heidi's home in Washington or a nursing home close by them. Carla further alleges that statements were made to Dorothy by John, Heidi, and Mary Jane, which included the following: that they were trying to get airline reservations to move her to Seattle; that they were trying to get her placed in a nursing home near John and Heidi; that time was running out; that Dr. Hewitt was cutting the kids off, and they were not going to have any money; that Dr. Hewitt was going to leave Dorothy with nothing; that Dorothy would be left alone; that Dr. Hewitt was going to dismiss the nurses from her case; that Dr. Hewitt was taking all the money; that Dr. Hewitt was going to put her in the hospital; and that Dr. Hewitt was going to "pull the plug on her". Carla alleges that a number of these statements are false. Dr. Hewitt claims that the statements are false and defamatory.

In early August 1991, Dr. Hewitt attended a convention in Denver. Prior to the convention, Dr. Hewitt traveled to

Seattle and stopped at John and Heidi's home. John and Heidi refused to meet with him. Dr. Hewitt called Portland to arrange a meeting with Mary Jane, but she also refused to meet with him. Upon returning home from the convention on August 7, 1991, Dr. Hewitt discovered that Dorothy was not at his residence. He alleges in his affidavit that she was kidnapped by his children. Dorothy was not taken to Washington, but remained in Hawaii where she now resides. Dr. Hewitt and Dorothy Hewitt were divorced in Hawaii in 1992.

On August 4, 1993, Dr. Hewitt filed an action in King County Superior Court against John, Heidi, Mary Jane, and Cindy for defamation, alienation of affection, and intentional infliction of emotional distress. The complaint alleged the existence of a conspiracy between the defendants and stated that the law of Hawaii should apply to the case. Dr. Hewitt served Cindy in Hawaii and Mary Jane in Oregon. Service of process on both was effected pursuant to Washington's long-arm statute, RCW 4.28.185.

On February 7, 1994, Cindy and Mary Jane moved for summary judgment of dismissal based on lack of personal jurisdiction. Dr. Hewitt moved to conduct additional discovery under CR 56(f), but the motion was denied. On March 10, the trial court granted the motion dismissing Cindy and Mary Jane. The trial court also awarded attorney fees.

Dr. Hewitt appeals the trial court's order of summary judgment, arguing that the trial court erred by: (1) dismissing his claim for lack of personal jurisdiction and (2) miscalculating attorney fees.

■ We first consider whether the trial court erred by dismissing Mary Jane and Cindy from the case for lack of personal jurisdiction. The standard for reviewing an order of summary judgment based on lack of personal jurisdiction was set forth in *MBM Fisheries, Inc. v. Bollinger Mach. Shop & Shipyard, Inc.*, 60 Wn. App. 414, 418, 804 P.2d 627 (1991): "When, as in this case, the trial court's ruling is based solely on a consideration of affidavits and

discovery, only a prima facie showing of jurisdiction is required. The allegations [of the] complaint must be taken as correct for purposes of appeal". (Citation omitted.) Therefore, with the allegations of the complaint treated as established, the question of personal jurisdiction is one of law which this court reviews de novo. *Lewis v. Bours*, 119 Wn.2d 667, 669, 835 P.2d 221 (1992).

■ In asserting jurisdiction over Cindy and Mary Jane, Dr. Hewitt relies on Washington's long-arm statute, RCW 4.28.185. The test for establishing jurisdiction under the long-arm statute involves a two-part analysis. First, the statute must extend jurisdiction. Second, the extension of jurisdiction must not violate principles of due process. *Walker v. Bonney-Watson Co.*, 64 Wn.App. 27, 33, 823 P.2d 518 (1992). Because we find that assumption of jurisdiction over defendants is not consistent with due process, we need not consider the statutory issue.

■ Three elements must be met before personal jurisdiction can be constitutionally exercised:

> (1) The nonresident defendant . . . must purposefully do some act or consummate some transaction in the forum state; (2) the cause of action must arise from, or be connected with, such act or transaction; and (3) the assumption of jurisdiction by the forum state must not offend traditional notions of fair play and substantial justice, consideration being given to the quality, nature, and extent of the activity in the forum state, the relative convenience of the parties, the benefits and protection of the laws of the forum state afforded the respective parties, and the basic equities of the situation.

(Footnotes omitted.) *Grange Ins. Ass'n. v. State*, 110 Wn.2d 752, 758, 757 P.2d 933 (1988) (quoting *Tyee Constr. Co. v. Dulien Steel Prods., Inc.*, 62 Wn.2d 106, 115-16, 381 P.2d 245 (1963)), *cert. denied*, 490 U.S. 1004 (1989). We primarily focus our analysis on the third prong, which we find has not been satisfied in this case.

Analysis under the third prong requires consideration of many factors. We first consider the benefits and protections of Washington laws that were afforded to defendants.

*See Grange*, at 758. Here, defendants have not purposefully availed themselves of the benefits of Washington laws in any way which would cause them to "reasonably anticipate being haled into court" here. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 62 L. Ed. 2d 490, 100 S. Ct. 559 (1980). Neither defendant owns property within Washington. Neither defendant personally performed any acts relating to this case within Washington. Dr. Hewitt alleges that defendants planned to move his wife to Washington, and engaged in preparatory acts to effect this purpose. This move, however, was never made. Defendants therefore did not avail themselves of Washington's protections in this respect.

We also consider issues of convenience. *See Grange*, at 758. Because Cindy lives in Hawaii, her burden in defending this suit in Washington would be enormous. While the burden on Mary Jane would not be as great, we recognize that she lives several hundred miles from Seattle.

We also note that Washington does not have a strong interest in adjudicating this dispute. Neither Dr. Hewitt, Dorothy Hewitt, Cindy Wagen, nor Mary Jane Hewitt is a Washington resident. *See Barer v. Goldberg*, 20 Wn. App. 472, 480, 582 P.2d 868 (court should consider interest of the State in providing forum for its residents), *review denied*, 90 Wn.2d 1025 (1978). Furthermore, no injuries took place in Washington. Indeed, Dr. Hewitt cites these same factors in his complaint when alleging that the law of Hawaii should apply to this case.[1]

Finally, we consider the "quality, nature, and extent" of defendants' activities within Washington. *Grange*, at 758. Respondents have not personally performed any instate acts relating to this case. Dr. Hewitt contends, however, that the Washington-based telephone calls made by John and Heidi may be imputed to Cindy and Mary Jane

---

[1]Dr. Hewitt asserts that Hawaii is an unavailable forum for his defamation claim because of the statute of limitations.

because of the existence of a conspiracy[2] among the four of them to commit the torts alleged in his complaint. According to this "conspiracy/imputation" theory, the in-state acts of resident defendants may be imputed to nonresident coconspirators for the purpose of obtaining long-arm jurisdiction over the nonresident defendants even where these defendants have not performed any acts within the forum state. Although Washington courts have not ruled on the constitutionality of this theory, other courts generally disapprove of its use.

In *Bankers Life & Casualty Co. v. Holland*, 346 U.S. 379, 98 L. Ed. 106, 74 S. Ct. 145 (1953), petitioner argued that an in-state actor was an "agent" of a nonresident coconspirator for the purpose of providing venue under section 4 of the Clayton Act, 15 U.S.C. section 15. The United States Supreme Court rejected this contention as "a frivolous albeit ingenious attempt to expand the statute". *Holland*, at 384.

A line of California cases follows the reasoning in *Holland*. In *Kipperman v. McCone*, 422 F. Supp. 860, 873 n.14 (N.D. Cal. 1976), the court found that use of the conspiracy/imputation theory in asserting long-arm jurisdiction violated principles of due process.

> The Supreme Court has labeled "frivolous . . ." and the vast majority of lower federal courts have rejected, the theory of vicarious venue for alleged conspirators. That much more frivolous is the contention that personal jurisdiction, the exercise of which is governed by strict constitutional standards, may depend upon the imputed conduct of a coconspirator.

(Citations omitted.) *Kipperman* at 873, n.14. *See also Kaiser Aetna v. I.C. Deal*, 86 Cal. App. 3d 896, 901, 150 Cal. Rptr. 615 (1978) (tortious acts of coconspirators cannot be imputed to defendants for purpose of asserting long-arm jurisdiction). We find the reasoning in *Kipperman* persua-

---

[2]Dr. Hewitt has alleged a conspiracy between Mary Jane, Cindy, John, and Heidi to commit unlawful acts. We assume that he has alleged sufficient facts to make out a prima facie case of the existence of a conspiracy.

sive, especially as applied to the facts of this case. Here, respondents have essentially no contacts with Washington and have not purposefully directed any activities hereto. Furthermore, Washington is an inconvenient forum with no strong interest in adjudicating this dispute. Given these factors, we find that imputed conduct is a connection too tenuous to warrant the exercise of personal jurisdiction.[3] We affirm the trial court's order for summary judgment.

██ Dr. Hewitt has also argued that the trial court erred by denying his motion to conduct additional discovery under CR 56(f) prior to the ruling on the summary judgment motion.

CR 56(f) states:

> Should it appear from the affidavits of a party opposing the motion that he cannot, for reasons stated, present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

The trial court's decision to order additional discovery pursuant to CR 56(f) is discretionary and reversible only for manifest abuse of discretion. *Coggle v. Snow*, 56 Wn. App. 499, 504, 784 P.2d 554 (1990). In construing FRCP 56(f), the Ninth Circuit in *Mackey v. Pioneer Nat'l Bank*, 867 F.2d 520, 523-24 (9th Cir. 1989) stated as follows: "Rule 56(f) requires affidavits setting forth particular facts expected from the movant's discovery. A Rule 56(f) motion must show how additional discovery would preclude summary judgment and why a party cannot immediately provide 'specific facts' demonstrating a genuine issue of material fact". (Citation omitted.)

In this case, Dr. Hewitt failed to make the showing sug-

---

[3]Several courts have accepted the conspiracy/imputation theory of long-arm jurisdiction. *See Ghazoul v. International Management Servs., Inc.*, 398 F. Supp. 307 (S.D.N.Y. 1975); *Professional Investors Life Ins. Co. v. Roussel*, 445 F. Supp. 687 (S.D.N.Y. 1978); and *Mandelkorn v. Patrick*, 359 F. Supp. 692, 695 (D.D.C. 1973). Given constitutional principles governing the exercise of jurisdiction, we find these cases unpersuasive, particularly in light of the facts and circumstances of this case.

gested by the court in *Mackey*. Dr. Hewitt argues that he should have been allowed to conduct additional discovery to obtain records and information concerning telephone calls between Mary Jane's home in Oregon and John's home in Washington. These materials, however, would have revealed nothing more than that defendants called each other, a fact that defendants had already conceded. Such records would not have disclosed the topics discussed by defendants and, therefore, would not have precluded summary judgment. We affirm the denial of the CR 56(f) motion.

Dr. Hewitt has also raised an issue regarding the admissibility of certain statements in Carla Keldie's affidavit. Dr. Hewitt claims that at the summary judgment hearing, defendants argued that the Keldie affidavit should not be considered because it contained inadmissible hearsay. Dr. Hewitt now asks this court for a ruling that the statements in the Keldie affidavit are admissible.

■ Only an aggrieved party may seek appellate review of a trial court decision. RAP 3.1; *Tacoma v. Taxpayers of Tacoma*, 108 Wn.2d 679, 685, 743 P.2d 793 (1987). In this case, Dr. Hewitt has not cited to any part of the record which indicates that the trial court made any ruling that statements in the Keldie affidavit were inadmissible as hearsay. In fact, the trial court's order for summary judgment mentions the Keldie affidavit in a list of submissions upon which the court relied in making its decision. Accordingly, because Dr. Hewitt has not made any showing that he is an aggrieved party concerning the hearsay issue, he is not entitled to review of that issue on appeal.

■■ Finally, we address the issue of whether the trial court erred in calculating the amount of attorney fees awardable to defendants. RCW 4.28.185(5) authorizes a trial court to award a reasonable amount of attorney fees to an out-of-state defendant who prevails in an action after being subject to jurisdiction under the long-arm statute. Where the defendant obtains a ruling that personal jurisdiction under the long-arm statute does not lie, the

court may award up to the amount of attorney fees that defendant would have incurred had the jurisdictional defense been presented as soon as the grounds for it became available. *Scott Fetzer Co. v. Weeks*, 122 Wn.2d 141, 149, 859 P.2d 1210 (1993). A trial court's award of attorney fees under RCW 4.28.185(5) is reviewed only for an abuse of discretion. *Fetzer*, at 148.

Dr. Hewitt contends that the trial court abused its discretion in calculating the fees awardable to defendants because the hours expended by defense counsel were not reasonable. In support of this contention, Dr. Hewitt notes two factors in particular: First, that defense counsel spent approximately twice as many hours preparing the summary judgment motion as plaintiff's counsel spent responding to the motion; and second, that 10.75 hours is not a reasonable amount of time to research and prepare a fee request where the fee request is composed solely of a three-and-one-half-page affidavit of counsel, biographies of the three defense counsel, and a copy of defense counsel's invoices.

We find that neither of these factors reveal an abuse of discretion on the part of the trial court in holding that the fees were reasonable. Defendants had the burden of proof on the summary judgment motion and submitted two briefs in support thereof. The extra time spent by defendants' counsel was therefore reasonable. The trial court's order granting summary judgment and its award of attorneys' fees is affirmed. Respondent is entitled to attorney fees on appeal subject to compliance with RAP 18.1.

BAKER, C.J., and Cox, J., concur.