46 P.3d 823 (2002)
111 Wash.App. 809
Donald WALLACE, Appellant and Cross-Respondent,
v.
Michael KUEHNER and Brenda Wallace Kuehner, husband and wife; and Kuehner Wallace Enterprises, Inc., Respondents and Cross-Appellants.
No. 25897-8-II.
Court of Appeals of Washington, Division 2.
May 17, 2002.
*825 Peter Thomas Petrich, Davies Pearson PC, Tacoma, for Respondents/Cross-Appellants.
Elizabeth Thompson-Lagerberg, Vanderstoep Remund Kelly & Blinks, Olympia, Scott Edward Blinks, Vandersoep Remund, Chehalis, for Appellants/Cross-Respondents.
*824 QUINN-BRINTNALL, J.
Donald Wallace appeals the trial court's ruling that the statute of limitations barred his suit to recover money he advanced his daughter and son-in-law. Wallace claims that (1) because one loan for $100,000 was secured by a promissory note, the trial court erred in applying the statute of limitations for oral contracts instead of the statute applicable to written contracts; and (2) the court erred by applying a two-year instead of a three-year delay in the commencement of the running of the statute of limitations on another loan (for $45,000), under the exception to the general rule that the statute of limitations on "demand loans" begins running immediately after the loan is made.
Wallace's daughter and son-in-law, Brenda and Michael Kuehner, counter-appeal, claiming the trial court erred in denying their request for attorney fees under the promissory note and CR 68.
We hold that there was no written or oral contract to repay the $100,000, and that the oral contract on the $45,000 loan delayed payment for two years; thus, these claims are barred. We also hold that the trial court properly denied the Kuehners' request for attorney fees.

FACTS[1]
Wallace made a nice living in farming and construction in Lewis County and presented money to all three of his children from time to time. At some point, Wallace told his daughter Brenda that there would or could be advances on her inheritance.
THE LOANS[2]
In 1991, the Kuehners moved from Seattle back home to Lewis County to establish a housing development company. Before the move, Wallace and the Kuehners extensively discussed their plans; the Kuehners testified it was understood that Wallace would help them financially as they got started. Shortly after the move, the Kuehners needed $100,000 for construction costs associated with their development called Napa Estates. On or about March 4, 1991, Michael Kuehner gave Wallace a promissory note executed that day for $100,000. Wallace took the note, saying he would have his lawyer review it, but he did not agree to loan the money.
The testimony at trial was undisputed: Between a few days to a week later, Wallace told the Kuehners that the note "wasn't worth the paper it was written on" unless they had the money to repay it.[3] Report of *826 Proceedings at 90, 190, 255. Wallace personally assisted the Kuehners by doing construction work on the development. When it became clear that only cash would forestall foreclosure, Wallace presented the Kuehners with a cashier's check for $100,000 on April 3, 1991. The trial judge found that Wallace made the statement questioning the worth of the promissory note after he advanced the $100,000. As discussed under the first issue below, it was undisputed at trial that Wallace made the statement before advancing the $100,000.
In September 1991, Wallace again provided the Kuehners money. This time it was $40,000; the memo line of the check read "loan for one year." Clerk's Papers at 9. The court found that this loan met the requirements of a written contract and was enforceable. The Kuehners have not appealed the court's judgment, and this loan is not before us.
In March 1992, Wallace provided the Kuehners $45,000, in the form of Wallace's personal check. The memo line stated "loan." The trial court found this loan was an oral contract, with a three-year statute of limitations. It also found that the parties contemplated a two-year delay in repayment, which delayed the beginning of the statute of limitations period until 1994:
The loan in check # 2 [the $45,000] is an oral contract with a statute of limitations of three years. Both parties anticipated there would be a delay in repayment of the loan until 1994. Therefore, the statute of limitations on the loan began to run in 1994. The statute of limitations barred collection of loan on Check # 2 after 1997.
Clerk's Papers at 9.
Wallace verbally demanded payment or a written acknowledgement of the debts in September of 1997. In correspondence dated November 19, 1997, Wallace's attorney made a formal demand for payment. On January 14, 1998, Wallace sued the Kuehners and their business, Kuehner-Wallace Enterprises, for repayment of six loans Wallace claimed he provided the Kuehners from 1991 to 1994. Only two of the loans are at issue in this appeal, one for $100,000 that Wallace claims was secured by a promissory note, and one for $45,000, evidenced by a check with the notation "loan" on the memo line.
TRIAL
The main issue at trial was the nature of the monetary presentments to the Kuehners, (1) whether they were intended as loans, gifts, or advancements on Brenda Kuehner's inheritance; and (2) if they were loans, what statute of limitations applied to their repayment. The trial court found Wallace "repudiated" the promissory note for the $100,000. The court concluded that this repudiation of the note rendered the loan an oral contract subject to the three-year statute of limitations.
The court also found that the parties intended a two-year delay in payment on the loans, forestalling commencement of the running of the statute of limitations until April 1994. Thus, it ruled that Wallace's claims to enforce the oral contracts expired in April 1996 ($100,000) and March 1997 ($45,000). The court dismissed Wallace's claims for repayment of both the $100,000 and the $45,000.
In resolving this appeal, we answer five questions. First, was there a written contract between Wallace and the Kuehners to repay the $100,000? Second, was there an oral contract between Wallace and the Kuehners to repay the $45,000? Third, does substantial evidence support the trial court's finding that the parties contemplated a two-year delay in repayment of the $45,000? Fourth, are the Kuehners entitled to recover attorney fees? And fifth, was the service by fax of the Kuehners' offer of judgment effective?

ANALYSIS
THE $100,000 ADVANCE ON INHERITANCE
Wallace challenges the trial court's finding that he repudiated the promissory note after giving he Kuehners the check for $100,000. Our review of a trial court's findings of fact and conclusions of law is a two-step *827 process. Landmark Dev., Inc. v. City of Roy, 138 Wash.2d 561, 573, 980 P.2d 1234 (1999). First, we must determine if the trial court's findings of fact were supported by substantial evidence in the record. If so, we must then determine whether those findings of fact support the trial court's conclusions of law. Landmark Dev., Inc., 138 Wash.2d at 573, 980 P.2d 1234.
A. Substantial Evidence
"`Substantial evidence' exists when there is a sufficient quantum of proof to support the trial court's findings of fact." Org. to Preserve Agric. Lands v. Adams County, 128 Wash.2d 869, 882, 913 P.2d 793 (1996) (citing In re Sego, 82 Wash.2d 736, 739-40, 513 P.2d 831 (1973)). We agree with Wallace that the record lacks substantial evidence to support the trial court's finding that Wallace repudiated the note after he gave the Kuehners the $100,000. The promissory note is dated March 4, 1991. The cashier's check for $100,000 is dated April 3, 1991.[4] All the evidence before the court established that the note was never accepted, and Brenda Kuehner testified that, within a week of its presentation, Wallace said he had "thrown it in the garbage." Report of Proceedings at 255. Wallace advanced the $100,000 approximately one month later.
Wallace's testimony is not as definitive as the Kuehners' regarding the sequence of events surrounding the promissory note and Wallace's subsequent deposit of the $100,000 in the Kuehners' bank account. But it still does not support the finding that he repudiated the note after advancing the $100,000. When testifying to what happened after Michael Kuehner gave him the note, Wallace stated:
Well, I think I told him I would have to show it to the attorney, but I never did take it to the attorney. And I thought about it for a while and finally I figured it meant on demand, so I would give him the money for it.... I told him it wasn't worth the paper it was wrote [sic] on unless he had cash to pay it off....
Report of Proceedings at 90.
Brenda Kuehner testified that her conversation about the promissory note occurred approximately four days after Michael Kuehner gave the note to Wallace, and at that meeting, Wallace stated his attorney had told him the note "wasn't worth the paper it was written on and that he had thrown it in the garbage." Report of Proceedings at 255. She believed the loan was off at that point.
Michael Kuehner likewise testified that at their next meeting (approximately a week after he gave Wallace the promissory note), Wallace repeated his attorney's assessment of the note: Michael Kuehner believed that Wallace had rejected the promissory note. Brenda Kuehner testified that at a subsequent meeting she "whined and I cried ... [and][h]e gave me $100,000." Report of Proceedings at 256.
The evidence establishes that Wallace rejected the promissory note before giving Brenda the cashier's check for $100,000. Also, the record does not establish that the offer was revived at any time. The trial court erred, both in finding that Wallace questioned the value of the note after presenting the Kuehners with $100,000, and in ruling that this amounted to a repudiation.
B. Repudiation
Repudiation of a contract before there has been a breach by nonperformance is called an anticipatory breach or (the more precise form) anticipatory repudiation. 2 E. ALLAN FARNSWORTH, FARNSWORTH ON CONTRACTS § 8.20, at 467 (1990). Such repudiation is an express or implied assertion of intent not to perform a party's obligations under the contract prior to the time for performance. CKP, Inc., v. GRS Constr. Co., 63 Wash.App. 601, 620, 821 P.2d 63 (1991), review denied, 120 Wash.2d 1010, 841 P.2d 47 (1992). A party cannot repudiate a contract after he has completed his performance under the contract. Sethre v. Washington Educ. *828 Ass'n, 22 Wash.App. 666, 672, 591 P.2d 838 (1979). Nor can a party breach a contract by anticipatory repudiation when no contract has been formed.
Wallace claims he did not repudiate the $100,000 loan because (1) the contract was not yet formed when he "rejected" the promissory note, (2) he subsequently performed under the contract, (3) any repudiation was equivocal, not meeting the requirements of a positive repudiation, and (4) even if he did repudiate the contract, he withdrew his repudiation when he loaned the money. We hold that Wallace unequivocally rejected the promissory note: No contract was formed.
Wallace argues that his statement regarding the promissory note was equivocal, and therefore could not amount to a "repudiation" of the contract. An anticipatory repudiation must be a positive statement or action indicating distinctly and unequivocally that a party cannot or will not perform its obligations. Olsen Media v. Energy Sciences, Inc., 32 Wash.App. 579, 585, 648 P.2d 493 (1982). Here, the trial court found that Wallace had done more than merely make a statement questioning the worth of the promissory note. It also found that Wallace told Brenda Kuehner that he had thrown the note in the garbage. Wallace does not expressly argue against this portion of Finding No. 6.[5] It is, therefore, a verity on appeal. See Cowiche Canyon Conservancy v. Bosley, 118 Wash.2d 801, 808-09, 828 P.2d 549 (1992). While we hold that there could be no repudiation  as a contract was never formedthis statement did serve as a rejection.
The constitution guarantees every person the liberty to do what is economically foolish as well as what may be generally considered prudent and wise. Douglas County Mem'l Hosp. Ass'n v. Newby, 45 Wash.2d 784, 792, 278 P.2d 330 (1954). The evidence establishes that Wallace rejected the note and then gave in to his daughter's request for money. Wallace's statement to Brenda Kuehner after advancing the money stressed that should she lose the money, her share of any anticipated inheritance would be affected. The promissory note having been thrown away and that fact having been communicated to Brenda Kuehner, the $100,000 was at most an advance on Brenda Kuehner's inheritance. There was no contract and no promise by the Kuehners to repay the $100,000.
THE $45,000 LOAN
The trial court appears to have found that the check for $45,000 was a demand loan, and that the parties contemplated a two-year delay in payment. When ruling the court stated it was rejecting the Barer exception to the general rule that the statute of limitations begins to run immediately on a demand loan.[6]See Barer v. Goldberg, 20 Wash.App. 472, 476, 582 P.2d 868 (1978).[7]
A. Demand
Under Barer, the statute of limitations begins to run either (1) when an actual demand for payment is made, or (2) at the end of the statutory period noted in the statute of limitations. In other words, once a period of time equivalent to the statute of limitations period elapses without an actual demand, a demand will be presumed, and the statute of limitations begins to run. Barer, 20 Wash. App. at 477, 582 P.2d 868.
Wallace argues that the trial court properly found that the Barer exception applies to this case, but that it misapplied the law in determining when the statute in this case in fact commenced running. We are not convinced the trial court applied the Barer exception. The judge explained his reasoning in his oral decision:

*829 I don't think that the Barer exception applies.... it's Mr. Blinks' interpretation [that] if you accept the Barer exception you go to the end of the statute of limitations and then add another equivalent time period. I don't believe that, and I think [Cochran v. Cochran, 133 Wash. 415, 233 P. 918 (1925)], the case that started all this, supports me on that. I think you have to look to the intent of the parties of what was the trigger that they thought was going to authorize a demand, a delayed demand.
Report of Proceedings (10/13/99) at 8-9 (oral ruling).
The court expressly found that "[o]n March 2, 1992, Wallace delivered a check to Brenda Kuehner for $45,000 ... (hereinafter `check # 2'). The check constituted a loan." Clerk's Papers at 8. The court further concluded that this check was
an oral contract with a statute of limitations of three years. Both parties anticipated there would be a delay in repayment of the loan until 1994. Therefore, the statute of limitations on the loan began to run in 1994. The statute of limitations barred collection of loan on Check # 2 after 1997.
Clerk's Papers at 9.
An oral loan agreement that does not provide a specific time or period for repayment is known as a "demand loan." Nilson v. Castle Rock Sch. Dist., 88 Wash. App. 627, 630, 945 P.2d 765 (1997). Absent other facts, a loan evidenced merely by a check with the notation "loan" upon it is governed by the three-year statute of limitations for oral contracts. Nat'l Bank of Commerce of Seattle v. Preston, 16 Wash.App. 678, 681, 558 P.2d 1372 (1977). Ordinarily the statute of limitations for demand loans begins to run on the date the loan is made. Hopper v. Hemphill, 19 Wash.App. 334, 336-38, 575 P.2d 746 (1978).
B. ExceptionDelay in Repayment
In cases where the parties intend a delay in repayment but do not make the delay an actual term of their contract, the Barer exception provides a bright line rule that avoids analysis of exactly when the parties contemplated a demand would be made: The statute begins running in the absence of an actual demand when the amount of time equal to the statute of limitations applicable in the particular case passes. This bright line rule prevents courts from becoming involved in ascertaining the parties' intent when the evidence does not establish that the delay period was definite enough to become a term of the contract.
But parties are also free to make a delay-in-payment a term of the contract, in which case the loan is no longer a demand loan. Here, the trial court found that the parties' oral contract included an agreement to delay payment for two years, until March 1994. Thus Barer does not apply. The loan was not a demand loan, but rather a loan in which the parties made the delay in repayment a term of the oral contract. The action to recover the $45,000 is time-barred under the statute of limitations and was properly dismissed.
ATTORNEY FEES
The promissory note that Wallace claims secured the $100,000 provided for attorney fees. Although they argued below and on appeal that the promissory note for $100,000 never formed a contract, the Kuehners nevertheless argue that they are entitled to attorney fees. They cite the reasoning of Herzog Aluminum, Inc. v. Gen. Am. Window Corp., 39 Wash.App. 188, 196-97, 692 P.2d 867 (1984), in which Division One of this court held that the legislature's intent in drafting RCW 4.84.330 was to apply unilateral attorney fee provisions bilaterally so as to include both parties to the contract. The court reasoned that the statute "encompasses any action in which it is alleged that a person is liable on a contract."[8]Herzog Aluminum, *830 39 Wash.App. at 197, 692 P.2d 867. While we do not necessarily disagree with the reasoning of Herzog, we decline to apply it here, where the parties seeking fees (the Kuehners) did not intend to form a contract.
In Herzog, General American had a contract to supply aluminum products for the construction of a bank and received a proposal from Herzog regarding the windows for the project. 39 Wash.App. at 190, 692 P.2d 867. Although both parties acted in good faith, they never agreed on the method of payment, resulting first in Herzog's rejection of General American's letter of credit and then in its bringing legal action. General American argued that the parties never formed a contract. Herzog Aluminum, 39 Wash.App. at 191, 692 P.2d 867. The court agreed, holding that the parties never came to a meeting of the minds on the method of payment; therefore, no contract was formed. Herzog, 39 Wash.App. at 190, 692 P.2d 867. Even though General American argued against the existence of a contract, Division One nevertheless awarded attorney fees to that party under the fee provision of the purported contract, citing the remedial intent of RCW 4.84.330 to apply unilateral fee provisions bilaterally. Herzog, 39 Wash.App. at 196-97, 692 P.2d 867.
Division One has firmly embraced the concept first presented in Herzog.[9] And Division Three came to the same conclusion in a case decided the following year, Meenach v. Triple "E" Meats, Inc., 39 Wash.App. 635, 640-41, 694 P.2d 1125 (1985). In that case, business owners executed a listing agreement with a broker to sell their business. Meenach, 39 Wash.App. at 636, 694 P.2d 1125. The broker associated with another broker, who found a buyer. But when it came time to close the sale, the sellers refused to sign, alleging that the papers did not reflect their agreement. Meenach, 39 Wash. App. at 636-37, 694 P.2d 1125. The sellers prevailed and sought fees on appeal.[10] In awarding the sellers fees, the court observed that
[a]ppellants' suit is based "on a contract". They seek to recover their commission pursuant to the terms of the contract. RCW 4.84.330 provides that the prevailing party shall be entitled to attorney fees "whether he is the party specified in the contract ... or not ..." Appellants contend respondents cannot recover attorney fees because respondents at trial argued there was no contract and consequently no breach. The statute does not distinguish between those who sue and those who are sued on an alleged contract.
Meenach, 39 Wash.App. at 640-41, 694 P.2d 1125.
This court agreed with the reasoning of Herzog in two cases, Yuan v. Chow, 96 Wash. App. 909, 915-18, 982 P.2d 647 (1999), review denied, 140 Wash.2d 1006, 999 P.2d 1261 (2000), a case also involving the enforceability of a promissory note when the obligee's agent signed the note,[11] and Stryken v. Panell, 66 Wash.App. 566, 572-73, 832 P.2d 890 (1992), a case involving the rescission of a *831 real estate contract due to a mutual mistake. In both cases, there was no doubt that a document had been executed. We see a distinguishing characteristic between Herzog and the cases that followed it: The parties intended to form a contract, but for some reason, whether due to a lack of a meeting of the minds (Herzog), mutual mistake (Stryken,) or statute of limitations (Yuan,) the contract was not enforceable. In contrast, here, there was no intention to form a contract.
Because the parties never intended to form a contract, the Kuehners are not entitled to fees below or on appeal.
SERVICE OF OFFER OF JUDGMENT BY FAX
Approximately two weeks before trial, on September 24, 1999, the Kuehners' attorney faxed Wallace an offer of judgment for $50,000. Trial commenced on October 7, 1999. The Kuehners argue that Wallace did not receive a judgment more favorable than their $50,000 offer of judgment, and that they are entitled to all costs incurred after the offer was made under CR 68. Wallace challenges service of the offer of judgment, claiming the Kuehners served it by facsimile, contrary to the rules of service. Because we hold that service by fax was ineffective, we affirm the trial court's denial of fees under CR 68.
Civil Rule 68[12] is intended to encourage settlements and avoid lengthy litigation. Dussault v. Seattle Pub. Sch., 69 Wash.App. 728, 732, 850 P.2d 581 (1993). The policy favoring fair settlements under CR 68 is promoted by certainty and the elimination of unintended results. Hodge v. Dev. Services of Am., 65 Wash.App. 576, 584, 828 P.2d 1175 (1992).
While no Washington case has directly addressed whether an offer of judgment may be served by fax, we rejected service of a trial de novo request by this method in Inman v. Netteland, 95 Wash.App. 83, 89, 974 P.2d 365 (1999) (specifically affirming the continued accuracy of this portion of O'Neill v. Jacobs, 77 Wash.App. 366, 890 P.2d 1092 (1995), overruled on other grounds, Nevers v. Fireside, Inc., 133 Wash.2d 804, 813-14, 947 P.2d 721 (1997)):
Service by facsimile is not a method of delivery provided for in the rule.
While advances in technology may someday result in the acceptance of service by facsimile as an authorized form of delivery, this is a policy question which is most appropriately decided within the established process for amendment of court rules.... Therefore, we hold that the delivery of the request for trial de novo by facsimile ... did not satisfy the service requirements of MAR 7.1.
Inman, 95 Wash.App. at 89, 974 P.2d 365 (quoting O'Neill, 77 Wash.App. at 369, 890 P.2d 1092). We further explained that sending a facsimile copy of a request for trial de novo does not constitute service as required by MAR 7.1(a) "and as further defined in CR 5(b)." Inman, 95 Wash.App. at 89, 974 P.2d 365 (emphasis added).
We hold that, absent the parties' written stipulation agreeing to service of documents by fax,[13] service of an offer of judgment by fax is ineffective. Finding no evidence of such a stipulation in the record, we hold the Kuehners did not effect an offer of judgment *832 and are barred from recovering the fees requested under CR 68.[14]
Affirmed.
We concur: MORGAN, J., and HUNT, C.J.
NOTES
[1] Sometime after trial but before oral argument in this case, the Kuehners filed for bankruptcy. On Wallace's motion, the bankruptcy court ordered relief from the automatic stay to pursue completion of this state court appellate proceeding.
[2] Wallace initially sued on six loans and, at the opening of trial, the parties reported a stipulation of judgment in the amount of $190,000 on some of them. The stipulation itself is not in the record before us.
[3] Brenda Kuehner also testified that Wallace told her that he had thrown the note away, and this representation also was before Wallace presented the couple with the $100,000. Neither party expressly challenges this portion of Finding No. 6 nor offers any argument or reference to the record to challenge it (see note [6]); therefore, it is a verity on appeal. See Cowiche Canyon Conservancy v. Bosley, 118 Wash.2d 801, 808-09, 828 P.2d 549 (1992).
[4] We also note that the dates are reversed in Finding No. 5: The finding should read that Michael Kuehner asked Wallace for the loan on March 4, 1991, and 30 days later, in April 1991, Wallace delivered the check for $100,000.
[5] Wallace assigns error to Finding No. 6, but he argues only about the sequence of events; he does not challenge the finding that he told Brenda Kuehner that he had thrown the note in the garbage.
[6] While the findings of fact and conclusions of law do not mention the Barer case, the trial court's oral ruling does.
[7] The Barer exception delays the running of the statute of limitations on demand loans when the parties contemplate a delay in making the payments and speedy demand would violate the spirit of the contract. Barer, 20 Wash.App. at 476, 582 P.2d 868 (citing Cochran v. Cochran, 133 Wash. 415, 418, 233 P. 918 (1925)).
[8] RCW 4.84.330:

In any action on a contract or lease entered into after September 21, 1977, where such contract or lease specifically provides that attorney's fees and costs, which are incurred to enforce the provisions of such contract or lease, shall be awarded to one of the parties, the prevailing party, whether he is the party specified in the contract or lease or not, shall be entitled to reasonable attorney's fees in addition to costs and necessary disbursements.
Attorney's fees provided for by this section shall not be subject to waiver by the parties to any contract or lease which is entered into after September 21, 1977. Any provision in any such contract or lease which provides for a waiver of attorney's fees is void.
As used in this section "prevailing party" means the party in whose favor final judgment is rendered.
[9] See, e.g., Bogle & Gates, P.L.L.C. v. Holly Mountain Res., 108 Wash.App. 557, 563-64, 32 P.3d 1002 (2001) (applying Herzog to award fees to party who successfully defended claims for fees allegedly owed under attorney retainer agreement); Western Stud Welding, Inc. v. Omark Indus., Inc., 43 Wash.App. 293, 298-300, 716 P.2d 959 (1986) (applying Herzog to award fees to party who defended various claims brought in relation to a purchase and sale agreement); Park v. Ross Edwards, Inc., 41 Wash.App. 833, 838-39, 706 P.2d 1097 (1985) (extending Herzog to apply to situations where the contract contains a bilateral attorney fee provision).
[10] The court noted that both the commercial listing agreement and the earnest money agreement (which was never executed) contained attorney fee provisions. Meenach, 39 Wash.App. at 640, 694 P.2d 1125. It is not clear from the opinion which fee provision the court applied.
[11] The main issue of the case on appeal was whether an amendment to RCW 62A.-401, that would have resulted in the principal's being liable on the note even though he did not sign it, should be applied retroactively.
[12] CR 68 reads in pertinent part as follows:

At any time more than 10 days before the trial begins, a party defending against a claim may serve upon the adverse party an offer to allow judgment to be taken against him for the money or property or to the effect specified in his offer.... If the judgment finally obtained by the offeree is not more favorable than the offer, the offeree must pay the costs incurred after the making of the offer.
[13] We note that the federal counterpart to CR 5(b) (effective December, 2001) now allows service by fax when the parties agree to such service in writing beforehand:

Delivering a copy by any other means, including electronic means, consented to in writing by the person served. Service by electronic means is complete on transmission; service by other consented means is complete when the person making service delivers the copy to the agency designated to make delivery. If authorized by local rule, a party may make service under this subparagraph (D) through the court's transmission facilities.
FRCP 5(b)(2)(D).
[14] Because service of the offer of judgment was ineffective, we do not reach the issue of whether the stipulated settlement, reached after the offer but before trial, would be included in determining whether "the judgment finally obtained by the offeree" is more favorable than the offer.